238 A.2d 754.

STANDISH-JOHNSON CO. *et al. vs.* ZONING BOARD OF REVIEW
OF THE CITY OF PAWTUCKET.

FEBRUARY 29, 1968.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

POWERS, J. This petition for a writ of certiorari seeks to quash a decision of the respondent board denying an application for relief from area and side yard restrictions. The writ issued and the appropriate records were accordingly certified for our examination.

It appears therefrom that Elizabeth Ashburn, as owner, and Standish-Johnson Co., as lessee, of a tract of land designated as lot 573 on assessor's plat 20 and located at 49 Mid-

dle street in the city of Pawtucket, applied to the respondent board for a variance so as to permit the construction on said lot of a billboard which the lessee would presumably use for advertising purposes.

It further appears that said lot contains 7700 square feet; has a frontage on Middle street of 97.65 feet; a depth of 50 feet at the northern end; and 80 feet at the southern end, with a rear lot line of 80 feet.

The parties agree that the lot as thus described was in existence when the applicable ordinance was adopted October 21, 1966. Under the provisions thereof the lot in question is located in an "MO" or manufacturing, open district. The parties further agree that the proposed billboard is a permitted use within an "MO" district.

Section 8 of the ordinance, Dimensional Regulations, provides that each lot in an "MO" district shall contain a minimum of 20,000 square feet and have a 100 foot frontage. It further provides for minimum yard setbacks of 20 feet for the front, rear, and sides. The billboard proposed to be built by the lessee would have a length of 47.5 feet and stand 36.5 feet high.

An understanding of the location and surrounding terrain of the subject land is essential to a comprehension of applicants' problem and for the relief sought. The lot fronts on Middle street, which is its western boundary, and is bounded on the east by U. S. Interstate Route 95, which at this point runs north and south. A short distance north of the subject lot Central avenue runs east and west; and at or about this juncture is the Broadway exit from Route 95, Broadway at this point being somewhat east of Middle street. It is also of significance that lying between Broadway and Route 95 is Fountain street. This street runs generally north and south, parallel to the interstate highway until it turns southwest and passes over Route 95 at a point less than 100 feet south of applicants' property.

The testimony before the board was that to have any commercial value, the billboard would be required to face north so that it would be conspicuous at the Broadway exit of Route 95.

However, thus constructed, the billboard would run east and west for 47.5 feet and the extreme width of the lot in question is 80 feet at its southern end. The application proposes that the billboard be erected 15 feet from the southern lot line and seeks relief from the 20 foot minimum side yard requirement. Considering that the front of the billboard would face north, applicants treat the southern lot line as a rear yard setback. However, the lot fronts on Middle street, its western boundary, and minimum setback requirements to the south would be side yard setbacks.

The greatest width of the lot being 80 feet and the proposed sign being 47.5 feet wide it is readily apparent that there is insufficient area to allow setbacks of 20 feet for each end of the proposed billboard. Thus, in point of fact, applicants would be required to obtain a five-foot relaxation not only to the south but to the east and west.

In any event, they sought relief pursuant to sec. 6.3 (a) of the ordinance which provides:

"Except as provided in subsection (b) below, a lot which does not conform to the regulations for street frontage or area in effect for the zone involved may be used in accordance with the use regulations in effect for the zone involved. Variance from other pertinent dimensional and general regulations shall be permitted only after the approval of an application therefor by the Zoning Board of Review."

It is clear from the foregoing that relief from the area and frontage restrictions is authorized as a matter of right by the ordinance. The 20 foot minimum requirement as to front, rear and side yard setbacks, however, is made mandatory unless relief therefrom is authorized by the board.

An application to the board for a variance from front,

rear, and side yard setbacks is required by sec. 13.2 of the ordinance to indicate the following:

(a) That special conditions and circumstances exist which are peculiar to the land or structure involved and which are not applicable to other lands or structures in the same zone;

(b) That literal interpretation of the provisions of this ordinance would deprive the applicant of rights commonly enjoyed by other properties in the same zone under the terms of this ordinance;

(c) That the special conditions and circumstances do not result from the actions of the applicant;

(d) That granting the variance requested will not confer on the applicant any special privilege that is denied by this ordinance to other lands or structures in the same zone.

The record establishes that applicants fully established their qualifications for relief as required by said sec. 13.2. However, sec. 13.4 of the ordinance provides that the board must also find that the variance requested is the minimum variance that will make possible the reasonable use of the land or structure.

At the hearing before the board on the instant application, testimony was offered by applicants that all efforts to put the lot in question to any other permitted use proved futile. Indeed, there is an indication in the record that some time previously, the board had authorized a use variance so as to permit the construction of a garage. There is further indication that because of the size of the lot every knowledgeable person consulted considered the property unsuitable for such a use.

Several remonstrants appeared and objected on the grounds that the billboard would constitute a private nuisance, affect the value of their property, or constitute a traffic hazard. As to these latter objections, no one testified who possessed the expertise that this court held to be

essential in *Thomson Methodist Church* v. *Zoning Board of Review,* 99 R. I. 675, 210 A.2d 138 (1965).

The board's decision denying the application is as follows:

"Section A & B not applicable. The Board is very familiar with the premises in question having recently granted an application for a garage at this site. There was no evidence of hardship on the present application. The sign as erected would create a traffic hazard at this intersection of Interstate 95 and Fountain Street."

The petitioners vigorously contend that the board's decision is not supported by competent evidence which, they argue, renders the decision illegal and arbitrary, citing numerous cases. In support of this contention they point to the fact that none of the remonstrants possessed expertise such as would qualify them to give competent testimony, and that the board's bald statement that it was familiar with the property and knew that it would constitute a traffic hazard is a conclusion unsupported by any facts to which it points, relying on *Coderre* v. *Zoning Board of Review,* 102 R. I. 327, 230 A.2d 247 (1967), and other cases.

They further contend that the board misconceived applicants' burden in that the relief sought was from lot line restrictions and that in such circumstances the burden of proving unnecessary hardship is less exacting than that required when the relief sought is to vary the use, citing *Viti* v. *Zoning Board of Review,* 92 R. I. 59, 166 A.2d 211 (1960).

The petitioners are correct as to the testimony of the remonstrants and the obligation on the board to make known the factual circumstances from which inferences are drawn or conclusions based but, in the view we take, this affords them little comfort and no assistance. Moreover, they are only academically correct in relying on *Viti.*

At the outset it is to be conceded that the board erred in holding "Section A & B not applicable." It refers here to subsecs. (a) and (b) of sec. 6.3 of the ordinance. Subsection (b) has reference only to single-family dwellings and

is without materiality here. However, as previously noted, subsec. (a) is the provision of the ordinance which vests the board with jurisdiction to grant relief from front, rear and side yard restrictions imposed by the ordinance on a lot which cannot conform to one or more of those restrictions when a permitted use is desired to be made. The applicants were then clearly correct in applying to the board under sec. 6.3 (a) heretofore quoted.

In support of their application, however, the burden was on them to show that the permitted use they intended to make was not possible unless the relief sought were granted. They offered no evidence whatsoever that a realization of the particular use required a billboard of nothing less than 47.5 feet in length. It is to be observed parenthetically that an "MO" zone has a height restriction of 40 feet and applicants have several feet leeway.

While it is true that *Viti* stands for the proposition that a property owner seeking to be relieved of yard and lot line restrictions does not have as harsh a burden in proving hardship as one who seeks a use variance, it does not stand for the proposition that a denial of more relief than is necessary constitutes an abuse of discretion. Stated otherwise, the burden is on the property owner to establish that the relief sought is minimal to a reasonable enjoyment of the permitted use to which the property is proposed to be devoted. See *Westminster Corporation* v. *Zoning Board of Review,* 103 R. I. 381, 238 A.2d 353, where this court approved the application of the *Viti* doctrine on a record which disclosed that a lesser degree of relief than that sought would deny the property owner the benefits of the permitted use sought to be served.

We think then that in the instant case the finding of the board that "There was no evidence of hardship on the present application," is warranted by the total lack of evidence that a billboard 47.5 feet in length was minimal to an en-

joyment by applicants of the permitted use they wish to make of their property.

In the consideration of an application for a variance, zoning boards of review are bound by the provisions of the state enabling act, G. L. 1956, §45-24-19 (c). It provides that the variance granted "will not be contrary to the public interest." In this regard it should be noted that in adopting an ordinance, the terms of the ordinance constitute a declaration of the public interest by the local legislature. Obviously then, any variance granted by a local board is necessarily contrary to the public interest as declared by the local legislature. *Heffernan* v. *Zoning Board of Review*, 50 R. I. 26, 144 Atl. 674 (1929). In that case this court stated "the words 'contrary to the public interest' should be interpreted to mean what in the judgment of a reasonable man would unduly, and in a marked degree conflict with the ordinance provisions." This implies that boards of review, in granting variances, should not authorize a greater degree of relief than is necessary to achieve a beneficial use.

In its oral argument and brief, respondent raised a question which, although a consideration thereof is without relevance to a review of the board's decision on its merits, has statewide implications. For this reason we deem it advisable to consider the question presented.

The board, in substance, contended that petitioners are not aggrieved by its decision for the reason that the regulation of billboards to be erected or maintained within 660 feet of the nearest edge of the right-of-way of an interstate highway such as U. S. Route 95 is vested in the state director of public works as set forth in G. L. 1956, chap. 10.1 of title 24, as amended. These provisions, enacted by P. L. 1966, chap. 117, it is suggested, divested respondent board of jurisdiction to grant the relief sought in any event.

An examination of the cited statute, however, discloses

that it is licensing in nature and affects all property owners alike without regard to zoning. The question of whether a required license, the jurisdiction for the granting of which is in some other agency, can be obtained by an applicant therefor is not the concern of a zoning board. If the use of the land to which such license would apply is permitted and not subject to restrictions falling within the scope of a zoning board's jurisdiction, there is no question for the consideration of that agency.

Where, however, as here, the property owner must first obtain relief from the zoning board before the premises could be licensed by the appropriate agency, an application to the zoning board for the necessary relief is first in order, and that body should pass on the question addressed to its jurisdiction without concerning itself as to whether the licensing agency would subsequently act favorably or otherwise.

The petition for certiorari is denied and dismissed, the writ heretofore issued is quashed, and the records certified are ordered returned to the respondent board without prejudice, however, to the petitioners to renew their application on the authority of sec. 6.3 (a) of the ordinance, the jurisdictional phase of which the board misconceived in considering the instant application.

*James Cardono,* for petitioners.

*Victor J. Beretta,* City Solicitor, *Gerald J. Pouliot,* Assistant City Solicitor, for respondent.