DECISION
This is an appeal from a decision of the Zoning Board of Review of the City of Cranston (Board). The appellants[1], Carpionato Properties, Inc. (Carpionato) and Joseph and Rosalie Accetta (collectively, the Accettas) are appealing the Board's July 30, 1997 decision granting Ralph Shippee's (Owner or Applicants) and Motorola Network Services Division's (Applicants) application for a use variance allowing a 180 foot telecommunications tower in an "A-20" residential zone. Jurisdiction is pursuant to G.L. 1956 § 45-24-69.
 Facts/Travel
On February 25, 1997, the Applicants filed an application for an "exception or a variation" under the zoning ordinance of the city of Cranston. The application sought the Board's permission to construct a 180 foot telecommunications tower on property identified as assessor's plat 20, lots 3 and 18. Such a structure is not a permitted use at the proposed site, property designated an A-20 residential zone. Motorola's financial agreement with Shippee as to use of the property is contingent upon the Board's granting of the variance.
Two parties opposed the application and are the source of this appeal. Carpionato is an abutting landowner of the subject parcel. Carpionato currently has plans to build apartments and a nursing home on its land. These structures would be in close proximity to the proposed tower. Joseph Accetta, the second opponent to the application, owns a telecommunications tower in Cranston. At the outset of the hearing, the Board questioned whether Accetta had the status of an "aggrieved party" as defined in the Zoning Enabling Act and the Cranston Ordinance. G.L. 1956 § 45-24-31(4), Cranston Ordinance Ch. 30, Art. II, § 30-3. After some debate, the Board proceeded to allow Accetta, in accordance with its custom, to testify as an "objector" or "enterested party[sic]." An objector is defined by the Board to be a party whose property falls beyond the 400 foot radius of the subject parcel. Accetta's property falls outside this radius. The Board stated that his testimony would be weighed accordingly.[2]
The Board considered the application at a properly advertised hearing on July 9, 1997. The record reveals that the Owner described the present state of the property as well as his history of efforts to develop the property. (R. at 18-25). A right of way, utilities and a partial sewer system exist on the property. Such improvements were made with an interest towards residential development. The owner did build a house on one of the original lots. Subsequent efforts for residential development of the remaining land, roughly eight acres, have not gone beyond the planning stage.
Glenn Spardello, qualified by the Board to be a real estate expert, testified on behalf of the Applicants. (R. at 25). Spardello testified that the entire parcel is currently being offered for $129,900. He further testified that no offers had been made in his 18 month effort marketing the property largely because of the inherent topographical difficulties of the site. Significant expense stemming from required "ledge" work, involving blasting, is the apparent obstacle to development.
Richard Bzdyra was offered and qualified as an expert witness in land surveying for the Applicants. Bzdyra echoed much of Spardello's opinion. He testified that the parcel encompasses "severe terrain" and resembles a "mountain." (R. at 35-36). Bzdyra opined that the site was not suitable for residential development. (R. at 42).
Next, John Boucher, a real estate developer and builder, testified on behalf of the Applicants. Boucher assigned "real numbers," in dollar amount, to the development options of the property. Site development costs included the following: $8,000 of drainage materials, $4,500 of sewer materials, $600 of erosion control materials, $3,000 of fill, $8,000 of road gravel, $2,000 of stone, $2,500 of concrete, $500 of construction materials, $15,000 of stumping and clearing, $28,000 of paving and Cape Cod berming, $3,000 of finish grading, $6,000 of trench work, $5,000 for a storm drainage system, $1,000 of general construction, $6,000 for an on-site foreman, $12,000 of surveying and engineering, $4,000 of land clearing, $200 for utilities, $500 of legal expenses, $5,000 for permits and fees, $500 of miscellaneous expenses, $2,000 of rental equipment, $12,000 for a contingency fund, $200,000 of blasting and $40,000 for trucking. Of note, Nobo Sircar, Chairman of the Board, interrupted questioning and reminded counsel acting on behalf of the Applicants that financial hardship is not a consideration in the Board's deliberations although "hardship that runs with the land" is a proper consideration. (R. at 66).
J. Clifden O'Reilly, the second real estate expert called by the Applicants, opined that a confiscatory taking would result if the owner was "forced" to develop it for residential purposes. (R. at 73).
The Applicants' final witness, William Booth, the Motorola territory business manager, testified as to the tower construction, maintenance and proposed uses.
John Kokot, vice president of development for Carpionato, testified on behalf of that entity and in opposition of the application. Kokot objected to the proposed use for it would, he believed, diminish the "tranquil location" of Carpionato's planned nursing home and elderly housing. (R. at 107).
A civil engineer, Ralph Cataldo, having previously examined the subject parcel, opined that it could be developed as a residential lot. In offering this opinion he did note that the parcel offered some challenging characteristics such as storm drainage run-off. Further, he stated that the tower would be in between the view from the proposed nursing home.
Next, the Board qualified Paul Cunningham as an expert real estate appraiser. Cunningham, having reviewed the site, testified that the parcel could house a residential development. As with Cataldo's opinion, Cunningham noted the ledge issue inherent to the site and any development project.
Joseph Accetta, a tower owner in Cranston, testified in opposition of the application. Accetta, not an engineer, testified as to his personal experiences in the field in which his business (the tower) operates. These experiences involved radio frequency and transmission interference or "pollution" purportedly due to tower congestion. The Board noted that Accetta had not been qualified as an expert and, as such, his testimony would be weighed accordingly. (R. at 144). Accetta also testified to the current availability of "space" on his tower as well as other towers in the city of Cranston, thus calling into question the need for the proposed tower.
Prior to the hearing, the Cranston Planning Commission conditionally recommended the tower.
On July 30, 1997, after deliberation, the Board granted the Applicant's variance allowing for a 180 foot telecommunications tower. The instant appeal followed.
 Standard of Review
Superior Court review of a zoning board decision is controlled by G.L. 1956 (1991 Reenactment) § 45-24-69(D), which provides:
 "(D) The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions or decisions which are:
 (1) In violation of constitutional, statutory or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
When reviewing a decision of a zoning board, a justice of the Superior Court may not substitute his or her judgment for that of the zoning board if he or she conscientiously finds that the board's decision was supported by substantial evidence. Apostolouv. Genovesi, 120 R.I. 501, 507, 388 A.2d 821, 825 (1978). "Substantial evidence as used in this context means such relevant evidence that a reasonable mind might accept as adequate to support a conclusion and means an amount more than a scintilla but less than a preponderance." Caswell v. George Sherman Sandand Gravel Co., Inc., 424 A.2d 646, 647 (R.I. 1981) (citingApostolou, 120 R.I. at 507, 388 A.2d 824-25). The reviewing court "examines the record below to determine whether competent evidence exists to support the tribunal's findings." New EnglandNaturist Ass'n, Inc. v. George, 648 A.2d 370, 371 (R.I. 1994) (citing Town of Narragansett v. International Association of FireFighters, AFL-CIO, Local 1589, 119 R.I. 506, 380 A.2d 521 (1977).
 Ordinance Amendments
The Cranston City Council amended portions of its zoning code during the pendency of the Applicants' application. Cranston Ordinances Nos. 97-7, 97-35. The application was filed on February 25, 1997. After initial postponement, the hearing was held on July 9, 1997. The Board rendered its decision on July 30, 1997. Such amendments were effective on March 24, 1997 and June 23, 1997. The amendments directly address telecommunications facilities including towers. In accordance with these changes, towers are permitted via special use permit in an A-20 district. Cranston Ordinance No. 97-7, § 2. Setback requirements are delineated as well as the mandate that a minimum separation of 2.5 miles exist between a proposed self-supporting or guyed tower and an existing tower. Cranston Ordinance No. 97-35, § 2.
The appellants contend that the application is subject to the aforementioned amendments. They allege the Applicants' failure to meet the "new" tower requirements and the Board's failure to make findings as to the application vis a vis these requirements merit reversal. In response, the Applicants argue the "old" ordinance, silent as to telecommunications towers, applies for this was the law in place at the time of the filing of the complete application.
Specifically, the Zoning Enabling Act provides that:
 "A zoning ordinance shall provide protection for the consideration of applications for development that are substantially complete and have been submitted for approval to the appropriate review agency in the city or town prior to enactment of the new zoning ordinance or amendment. Zoning ordinances or other land development ordinances or regulations shall specify the minimum requirements for a development application to be substantially complete for the purposes of this section. Any application considered by a city or town under the protection of this section shall be reviewed according to the regulations applicable in the zoning ordinance in force at the time the application was submitted. . . ." G.L. 1956 § 45-24-44 (emphasis added).
The application submitted to the Board is dated February 25, 1997. A review of the record reveals a "Proposed Site Plan," a "400 Foot Radius Map" and "Plat No. 20/3" to be part of the submitted application. These "plans and specifications" required to be in the application, rendered the application substantially complete. See Cranston City Ord. Ch. 30, Art. IX, § 30-42 (h); § 30-40(b); Art. X, § 30-46. A plain reading of the statute thus results in the former ordinance, silent as to a telecommunication tower use, constituting the applicable law. Appellants' reliance on the Shalvey line of cases, requiring a building permit holder to have a vested interest in the permit issued under the former ordinance in order to negate the application of the subsequently amended ordinance, is inapplicable to the present matter which is governed by the aforementioned city ordinance and state law provisions.
 Standing
Respondents have questioned the Accettas' ability to appear before this Court as aggrieved parties by arguing that they lack standing. An aggrieved party is defined in both the Zoning Enabling Act and the Cranston City Code as "(a) Any person or persons or entity or entities who can demonstrate that their property will be injured by a decision of any officer or agency responsible for administering the zoning ordinance of a city or town; or (b) Anyone requiring notice pursuant to this chapter." G.L. 1956 § 45-24-31(4), Cranston City Ord. Ch. 30, Art. II, § 30-3. An appeal of a zoning board decision is brought by an aggrieved party. G.L. 1956 § 45-26-69.
At the first tier of standing analysis, standing before the Board, the Accettas clearly qualified as an aggrieved party. As recipients of the required public notice informing them of the pending application before the Board, the Accettas had standing to address the board regarding the application. G.L. 1956 §45-24-66; Cranston City Ord. Ch. 30, Art. IX, § 30-42(g). In fact, the notice is to inform, on its face, recipients of this right. Id. Further, the recipient is entitled to be represented by counsel and have expert witnesses testify on his behalf Id.
In analyzing the second tier of standing analysis, standing before this Court, it is clear that one is aggrieved, and thus has standing, upon a showing of injury. See Blackstone ValleyChamber of Commerce v. Public Utilities Commission, 452 A.2d 931, 934 (R.I. 1982) (a party seeking judicial review has the burden of establishing that he is aggrieved by showing actual or threatened legal injury); Flynn v. Zoning Board of Review,77 R.I. 118, 122, 73 A.2d 808, 810 (R.I. 1950) (one is aggrieved when he is the owner of property the use of which would naturally be affected adversely by a decision of the board). Aggrievement is further refined within the zoning context by establishing a close proximity, that is closeness or nearness, to the property at issue. DiIorio v. Zoning Board of Review, 105 R.I. 357, 359-361, 252 A.2d 350, 352-353 (R.I. 1969) citing Bastedo v.Zoning Board of Review, 89 R.I. 420, 153 A.2d 531 (R.I. 1959);Flynn, 73 A.2d at 808;. When the record does not evidence aggrievement and one does not sufficiently allege aggrievement in one's pleadings one risks a failure to demonstrate standing.See D'Almeida v. Sheldon Realty Co., 105 R.I. 317, 252 A.2d 23
(R.I. 1969) (citation omitted).
The record does not demonstrate injury to the Accettas. Joseph Accetta, a tower owner in Cranston, was not recognized by the Board as an expert but rather an objector or interested party. Accetta's tower is located two miles from the property at issue. The record does not establish this two mile distance as a distance of "close proximity." DiIorio, 252 A.2d at 353. There is no showing that Accetta's property shares the same plat as the property of the applicant, that Accetta's property is in view of the Owner's property or that Accetta's land is a "short distance" from the Applicant's property. Id. at 352-353 (citations omitted). Further, Accetta testified as to his personal experiences in the industry, particularly his interest in the environmental issue of radio frequency pollution. (R. at 141-148, 150-151). The record is devoid of expert testimony as to the exact cause and remedy of such pollution.
The Accettas' complaint broadly states that their "substantial rights have been prejudiced." The alleged harm appears to stem from, as found in preceding paragraphs of the complaint, the Board's improper application of the use variance standard. The substance of the Accettas' brief, in parallelling the complaint's allegations, attacks the Board's grant of the use variance in light of the Applicants' failure to meet the requisite legal standards as to such relief. In sum, the Accettas argue that neither unnecessary hardship nor a lack of a beneficial use is established by the Owner in the record. It follows then, the Accettas argue, that the Board's decision, based upon the record, is erroneous. However, nowhere do the Accettas articulate the particular injury or injuries alleged to be sustained to their property as a result of the Board's decision. As a result of this deficiency, Accetta does not have the requisite standing to appeal the Board's decision to this Court. Blackstone Valley Chamber of Commerce, 452 A.2d at 934,Flynn, 73 A.2d at 810.
 Use Variance
In their application to the Board, Applicants sought relief from, among other sections, Section 30-20, entitled "Variances.," of the Cranston City Code. The particular type of variance requested is a "use variance." A use variance is defined as "[p]ermission to depart from the use requirements of a zoning ordinance where the applicant for the requested variance has shown by evidence upon the record that the subject land or structure cannot yield any beneficial use if it is to conform to the provisions of the zoning ordinance. G.L. 1956 § 45-24-31
(61(a)). Cranston has in effect a zoning ordinance in conformance with the Zoning Enabling Act. Cranston City Code Ch. 30, Art. I., § 30-1 et seq. As to a use variance, the code requires that applicants meet each of a five step standard modeled, nearly verbatim, after the standard set out in G.L. 1956 § 45-24-41. Cranston City Code Ch. 30, Art. VI., § 30-28.
The applicant must demonstrate that the hardship from which the applicant seeks relief is due to the unique characteristics of the subject land or structure; that the hardship is not the result of any prior action of the applicant and does not result primarily from the desire of the applicant to realize greater financial gain; that the granting of the requested variance will not alter the general character of the surrounding area or impair the intent or purpose of this ordinance o[r] the Comprehensive Plan; that the relief granted is the least relief necessary; and, that in granting a use variance the subject land or structure cannot yield any beneficial use if it is required to conform to the provisions of this ordinance. Id.
A real hardship stemming from the unique characteristics of the land or structure must be established. Id. Unnecessary hardship exists when literal application of the zoning ordinance completely deprives an owner of all beneficial use of his property. Almeida v. Zoning Bd. of Review of the Town ofTiverton, 606 A.2d 1318, 1320 (R.I. 1992) (citation omitted). An indirect confiscation of the property would occur as a result of the hardship but for a variance. Id. The record displays that all of the Applicants' qualified expert witnesses concurred on characteristics of the subject property. Particularly, the testimony revealed the ledge and steep terrain to be hardships unique to this land. (R. at 34-42). One witness stated the land to be accessible only to goats due to its steepness. (R. at 71). Competent evidence exists in the record to support the granting of the variance.
John Boucher, a real estate developer testifying on behalf of the Applicants, described two development scenarios for the property. (R. at 56-68). The first scenario called for six lots accessed by a road ending in a cul de sac. Such a site development would typically cost $150,000. (The offering price for the entire parcel of land, as testified to by Spardello, is $129,900). (R. at 33). Boucher further testified that the likely ledge work would drive this cost up to $500,000. The second scenario envisioned one house on the property accessed by a private driveway (a rough driveway presently exists at the site). The minimum approximation of the cost for site development offered by Boucher as to this scenario equated to $28,500. However, another expert, O'Reilly, testified that utilizing the remaining land, approximately eight acres, for one residential lot would not be a reasonable use of the land. (R. at 71-73). The economic cost involved in developing the property to suit residential needs reaches a confiscatory level. Gaglione v.DiMuro, 478 A.2d 573 (R.I. 1984). This alleged hardship deprives the Owner of all beneficial use of the land. Id. Such hardship is not the result of any prior action of the applicant.
Additionally, the Applicants' burden was to also establish that the proposed use would not alter the general characteristics of the surrounding area, a district zoned as residential. To this end, several of the Applicants' witnesses testified as to the visual impact of the proposed structure. (R. at 44, 49, 76). It appears that from nearby vantage points the lower portion of the tower would be obstructed by existing trees and vegetation. The upper portion would also be largely obstructed due to the steep grade of the land designated as the proposed site. Thus, as to this element Applicants did offer competent evidence, namely, that the tower would be compatible with the immediate area. SeeCaswell v. George Sherman Sand Gravel Co., Inc., 424 A.2d 646
(R.I. 1981); (R. at 77-78).
The relief offered by a variance is to be the least relief necessary. G.L. (1956) § 45-24-41 (c)(4); Cranston City Code Ch. 30, Art. VI., § 30-28 (4). An Applicant witness, Clifden O'Reilly, certified by the Board to be a real estate expert, testified that the proposed use represented the "least amount of variance . . . to have a reasonable use . . . of this tract of land." (R. at 78). Thus, again, the Board had before it competent evidence that the relief sought was to be the least relief necessary. See Standish-Johnson Co. v. Zoning Bd. of Review ofthe City of Pawtucket, 103 R.I. 487, 238 A.2d 754 (1968).
Finally, the grant of a variance is contingent upon a showing that the subject land or structure could not otherwise yield any beneficial use. G.L. (1956) § 45-24-42 (D); Cranston City Code Ch. 30, Art. VI., § 30-28 (c)(1). As previously noted, the record repeatedly reveals the topographical limitations of the subject parcel. Permitted uses remain unattainable due to the unnecessary hardship inherent to the land. To limit the Owner to the uses as zoned would amount to a confiscatory taking of the property and a deprivation of all beneficial use of the property.Almeida, 606 A.2d at 1320.
 Findings of the Board
In considering an appeal from a zoning board of review, the Court is required to review the record of the hearing before the Board. G.L. 1956 § 45-24-69(C). Appellants argue that the Board's decision is conclusory. Further, appellants state that the Board erroneously applied the use variance standard in arriving at its decision.
In reviewing a board's decision the court must examine the entire record to determine whether "substantial evidence" exists to support the board's finding. Salve Regina College v. ZoningBd. of Review, 594 A.2d 878 (R.I. 1991) (citations omitted). A zoning board of review is required "`to make findings of fact and conclusions of law in support of its decisions in order that such decisions may be susceptible of judicial review.'" C.P.W. v. Cityof Cranston, 684 A.2d 689, 691 (R.I. 1996) (citing Thorpe v.Zoning Board of Review of North Kingston, 492 A.2d 1236, 1236-1237 (R.I. 1985)). Zoning boards that fail to comply with such obligations run the risk of reversal if the court is unable to find sufficient grounds for the decision. Hopf v. Boardof Review of the City of Newport, 120 R.I. 275, 288,230 A.2d 420, 428 (1967). If the court is able "to ascertain from the record the reasons for the board's decision," Richards v.Zoning Board of Review of the City of Providence,100 R.I. 212, 200, 213 A.2d 814, 818 (1965), and said decision is supported by substantial evidence, it will be upheld.
The decision granting the variance provided by the Board directly incorporates the findings of fact offered by the Planning Commission (an entity which had recommended the proposed plan). These findings orient the tower's location on both the subject parcel and in relation to surrounding landmarks. Additionally, the commission's findings offer "probabilities" as to sight lines to the tower from surrounding locales. The only supplemental finding by the Board in its decision reads "the Board feels that granting this application will not prove detrimental to the neighborhood."
The decision, then, makes requisite findings of fact and conclusions of law as to one element, the proposed variance's impact on the general character of the surrounding area, of the five-pronged use variance standard. C.P.W., 684 A.2d at 691. This Court has fully examined the record to discern evidentiary support for the Board's grant of the variance. Legal consideration by the Board of the use variance standard is evident throughout the record particularly in the questioning of witnesses. The Board ultimately addressed all necessary legal elements before granting the requested use variance. This Court's examination of the record revealed that the Board's decision is supported by the reliable, probative, and substantial evidence of record. Richards, 213 A.2d at 818.
Upon review of the entire record, this Court finds that the decision of the Board is supported by reliable, substantive and probative evidence and there is no violation of constitutional, statutory or ordinance provisions. The Board did not act in excess of authority granted to it by statute or ordinance provisions. The Board's decision is neither clearly erroneous in view of the record nor is it arbitrary or capricious. There are no errors of law or procedure such that substantial rights of the appellant were prejudiced. Accordingly, the decision of the Board is affirmed.
Counsel shall submit the appropriate judgment for entry.
[1] Originally the appellants filed separate complaints, No. 97-3962 and No. 97-4019. Subsequently, this Court approved consolidation of the two into No. 97-3962.
[2] Respondents' contention that Accetta lacks standing to appeal the Board's decision to this Court has merit. Because Accetta's property falls outside the 400 foot radius of the subject parcel, Accetta, to have standing, must establish under the aggrieved party definition, that his property is or will be injured. See Blackstone Valley Chamber of Commerce v. PublicUtilities Commission, 452 A.2d 931, 934 (R.I. 1982). This issue is addressed in more depth in the body of this decision.