[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
This matter is before the Court on the appeal of John H. Terry and Melissa Underhill ("Appellants") from a decision of the Providence Zoning Board of Review ("Board"). The decision granted a use variance to Andrew and Linda Costa ("Appellees") to convert a multi-family dwelling into a bed and breakfast. Jurisdiction is pursuant to G.L. (1956) § 45-24-69.
 FACTS AND TRAVEL
The Appellees own real property located at 42-44 North Court Street, Providence, Rhode Island, otherwise identified as Assessor's Plat 10, Lot 83 in the City of Providence ("Property"). The Property is positioned in an R-2 zone. Pursuant to § 45-24-41(a), the Appellees applied to the Board for a use variance to convert the four unit multi-family dwelling situated on the Property into a bed and breakfast with one owner-occupied apartment and seven guest rooms.
In compliance with § 45-24-41(b), the Board conducted a public hearing on the Appellees' request for a use variance on August 20, 2002. At the public hearing, the Appellees testified as to the details of the proposed conversion. The Appellees hoped the bed and breakfast would provide an alternative to business travelers who wished to eschew a stay at the larger hotel chains. To effectuate this alternative, the Appellees planned to convert the kitchens and extra closet space in the existing apartments into bathrooms. The proposal apportioned one bathroom, which would include a shower, sink, and toilet, to each of the seven guest rooms. The conversion did not include any alterations to the exterior of the building.[1] In addition, the Appellees testified that existing parking did not require any alteration, because it could accommodate the increased use.
Finally, the Appellees argued that the operation of a bed and breakfast would not alter the character of the neighborhood. In support of this argument, the Appellees testified that two other bed and breakfasts and a law office operate on the same street, but do not negatively impact the character of the neighborhood.
After the Appellees' testimony, two local property owners raised objections to the proposal. First, Timothy More, the owner of property located at 135 Benefit Street, suggested that the current trend in the neighborhood was a move toward owner-occupied housing rather than rooming houses. To evidence this trend, he stated that other rooming houses in the neighborhood established in the 1970s had since been converted to owner-occupied condominiums. Mr. More also opined that a request for seven rooms was excessive. He argued that such an excessive request would result in added traffic and congestion in the neighborhood.
Second, Appellant John Terry, who owns the property located at 40 North Court Street, also objected to the requested variance. Relying on the fact that the proposal would, in effect, double occupancy, he echoed the concerns raised by Mr. More regarding the increased traffic and congestion. In addition, he suggested that an increase in the number of tourists would cause instability in the neighborhood, because tourists would not possess the same concern for the neighborhood as permanent residents.
Under the authority conferred by § 45-24-43, the Board voted unanimously to grant the use variance but conditioned its approval on several requirements. To address the concerns raised at the public hearing, the Board reduced the plan to six (6) total units, five (5) guest rooms and one (1) owner-occupied apartment. Additionally, the Board mandated that the bed and breakfast remain owner-occupied and operated.
On January 15, 2003, the Board issued its written approval of the plan via Resolution 8630. As required by § 45-24-61, the Board found that the Appellees' plan to establish a bed and breakfast necessitated the relief requested in the application for the use variance. In reaching this conclusion, the Board pointed to the fact that a similar bed and breakfast located nearby had not reduced the quality of life in the neighborhood. Citing its familiarity with the Property and the surrounding neighborhood, the Board concluded that: (1) no prior action of the Appellees caused the hardship; (2) the hardship did not result primarily from the Appellees' desire for financial gain; and (3) the requested variance would not impair the intent of the Zoning Ordinance or detrimentally affect the character of the neighborhood.
Pursuant to § 45-24-69, the Appellants timely filed the instant appeal of the Board's decision in the Providence Superior Court on January 29, 2003.[2] Shortly thereafter, the Appellees filed a motion to dismiss based on the Appellants' failure to comply with the notice provisions set forth in § 45-24-69.1. At a February 6, 2004 hearing, Judge Procaccini declined to issue a ruling on the merits of the motion to dismiss but, rather, granted the Appellants an extension of time to comply with the notice provisions. Judge Procaccini gave the Appellants ten (10) days to send notice to all interested parties as required by § 45-24-69.1. The ten-day period began running on February 9, 2004, the Monday following the hearing. As evidenced by the postmark on the returned notices entered into evidence, the Appellants sent notice to the interested parties on February 19, 2004.
While the motion to dismiss was pending, the Rhode Island Supreme Court issued its decision in Jeff Anthony Properties v. Zoning Bd. of Review,853 A.2d 1226 (R.I. 2004) on June 24, 2004. Because the decision addressed substantially the same issue raised by the motion, this Court directed the parties to reconsider their arguments in light of the recent precedent. Armed with the instructive decision, the Court is now prepared to address the merits of the Appellees' motion to dismiss. After articulating its reasons for denying said motion, the Court will proceed to review the substance of the Board's decision to grant the requested use variance.
 STANDARD OF REVIEW
Section 45-24-69 confers jurisdiction on the Superior Court to review the decision of a zoning board. Section 45-24-69(d) provides in relevant part:
 "The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions, or decisions which are:
 (1) In violation of constitutional, statutory, or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
When conducting an appellate review of a zoning board decision, "the Superior Court may not substitute its judgment for the zoning board of review concerning the weight of the evidence on questions of fact." MillRealty Associates v. Crowe, 841 A.2d 668, 672 (R.I. 2004). "It is the function of the Superior Court to examine the entire record to determine whether "substantial evidence" exists to support the board's findings."Id. (quoting De Stefano v. Zoning Bd. of Review, 122 R.I. 241, 245,405 A.2d 1167, 1170 (1979)). The Court has defined the term `substantial evidence' as "more than a scintilla but less than a preponderance."Apostolou v. Genovesi, 120 R.I. 501, 508, 388 A.2d 821, 824-25 (1978). The Court should affirm the Board's decision if review of the entire record reveals substantial evidence to support the decision. Mill RealtyAssocs., 841 A.2d at 672.
 APPELLEE'S MOTION TO DISMISS
The Appellees argue that the Appellants' failure to timely comply with the notice provisions of § 45-24-69.1 is fatal to the instant appeal. Section 45-24-69.1 states in pertinent part:
 "(a) Whenever an aggrieved party appeals a decision of a zoning board of review to the superior court pursuant to the provisions of § 45-24-69, the aggrieved party shall also give notice of the appeal to those persons who were entitled to notice of the hearing set by the zoning board of review. The persons entitled to notice are set forth and described in § 45-24-53.
 (b) Notice of the appeal shall be mailed to those parties described in § 45-24-53 within ten (10) business days of the date that the appeal is filed in superior court not counting Saturdays, Sundays, or holidays. Notice shall be sent by first class mail, postage prepaid, and the cost of the notice shall be borne by the aggrieved party filing the appeal in superior court."[3]
In Jeff Anthony Properties, the Supreme Court specifically addressed the effect of an appellant's failure to comply with § 45-24-69.1. The Court stated:
 "Although the Legislature clearly stated that zoning appeals are to be `governed' by §§ 45-24-69 and 45-24-69.1, it did not go so far as to denominate the notice provisions of § 45-24-69.1 as conditions precedent to jurisdiction. Absent clear statutory language that the ten-day notice requirement is jurisdictional, we conclude that a party's failure to so comply does not automatically require that it forfeit its right to appeal an adverse decision of a zoning board. We do not believe that the Legislature intended such a draconian result." Jeff Anthony Properties, 853 A.2d at 1231-32.
Despite its refusal to classify compliance with § 45-24-69.1 as a condition precedent to jurisdiction, the Court nevertheless held that a Superior Court justice has the discretion to dismiss an appeal for an Appellants failure to comply with the notice requirements of § 45-24-69.1.Id. at 1232. However, the Court established the following two-prong standard to determine whether such a dismissal is warranted: (1) the reasons, if any, for lack of compliance; and (2) the prejudice to the interested party who was not properly notified. Id.
 Reasons for Lack of Compliance
The notice provisions of § 45-24-69.1 are designed to ensure that all interested parties are apprised of a zoning appeal which may affect either their property rights or the neighborhood where their property is located. During the ten-day reprieve granted by Judge Procaccini, the Appellants mailed the required notice to interested parties as directed by § 45-24-69.1 on February 19, 2004. The Appellants concede that they did not have a good reason for their initial failure to comply. In a hearing before this Court on August 3, 2004, the Appellants' attorney testified that "in terms of why I didn't send out the notices, it's a pure oversight in my case in terms of knowing what the law says." (Tr. of August 3, 2004 at 16). Although pure oversight is not a compelling excuse for their failure to comply with § 45-24-69.1, the Court's analysis does not end with the first prong. To trigger the Superior Court's discretion to dismiss the action, the Appellees must also satisfy the second prong by showing some sort of prejudice caused by the delay.
In both their memoranda and their oral argument before the Court in support of their motion to dismiss, the Appellees failed to articulate any concrete prejudice caused by the delayed notice. The Appellees' only attempt to show prejudice was their "lag in time" argument. They suggested that the Appellants' failure to obtain an updated address list of property owners prior to sending notice may have caused prejudice to people who acquired property between the August 20, 2002 public hearing and the notice issued on February 19, 2004.
However, the facts do not support the Appellees' argument. The Appellants sent notice to forty-two (42) interested parties. Of these forty-two notices, only eight were returned as undeliverable. Of the eight, the Appellants' counsel addressed one notice to the former owner of 40 North Court Street. Since Appellant John Terry is the current owner of the property located at 40 North Court Street, clearly, no prejudice occurred.[4] Five of the eight notices were identical to notices returned regarding the public hearing. Another notice was returned for lack of postage. Yet another notice was sent to the former address of the Providence Public Building Authority. Consequently, only one of the forty-two notices poses a potential problem. The Court is not persuaded that one returned notice out of forty-two constitutes prejudice.
Furthermore, § 45-24-53(c)(2) requires that notice be sent to the owners as shown on the "current" real estate tax assessment records. The Court finds that the most reasonable interpretation of the word "current" is current as of the date of the initial public hearing. Under that interpretation, the Appellants used the proper records to ascertain the addresses of the appropriate parties.
The Court finds the Appellees' argument in support of its motion to dismiss to be speculative at best. In the instant case, prejudice would have resulted from an interested party's inability to intervene in the instant appeal. However, Judge Procaccini cured any possible prejudice caused by the Appellants' failure to timely comply with the notice provisions by giving the Appellants a ten-day period with which to comply. Given that the Appellees have failed to show that the delay in the receipt of the notice caused any prejudice, the Court declines to exercise its discretion to dismiss the instant appeal. Therefore, the Appellees' motion to dismiss is hereby denied.
 ZONING BOARD DECISION Use Variance
As previously stated, the Appellees seek to convert the Property, located in an R-2 zone, from a four unit multi-family dwelling to a bed and breakfast. However, under Chapter 27 § 303 of the Code of Ordinances of the City of Providence (Ordinance), neither a multi-family dwelling nor a bed and breakfast is a permitted use for property located in an R-2 zone. As such, the Appellees ask the Board to allow the conversion of the Property from one non-conforming use to a different non-conforming use. Under § 201.8 of the Ordinance, a use in a residential zone "shall only be changed to a permitted use or to a use listed under the same use code. . . ." Additionally, § 419.5 of the Ordinance provides that a non-conforming use may be changed to another use only if allowed by special permit. Pursuant to Ch. 27 § 303 of the Ordinance, a permit should not issue for the operation of a bed and breakfast in an R-2 zone. Consequently, the Appellees had to secure zoning relief in the form of a use variance to effectuate their proposed conversion.
The Appellants advance three primary arguments challenging the Board's decision to grant the use variance requested by the Appellees. First, the Appellants argue that the Board made no finding of hardship as to the Appellees' use of the property. Second, they contend that the Appellees have not met their burden of establishing economic impossibility of the existing use under Almeida v. Zoning Bd. of Review of Town of Tiverton,606 A.2d 1318 (R.I. 1992). Finally, the Appellants claim that the Appellees have offered no evidence to refute the allegation that they sought a use variance simply to realize financial gain.
In response, the Appellees state that the Board arrived at a decision and related findings of fact after carefully weighing the evidence presented at the public hearing. As such, the Appellees suggest that the Court should defer to the Board's particular knowledge of the area and local zoning conditions. Additionally, the Appellees maintain that they sought a use variance to improve the Property and maintain the standards of the neighborhood, not merely to realize financial gain.
A use variance is intended to remedy the operation of a zoning ordinance which deprives an owner of all beneficial use of his land. Seee.g., Northeastern Corp. v. Zoning Bd. of Review of New Shoreham,534 A.2d 603, 605 (R.I. 1987); Consolidated Realty Corp. v. Town Councilof North Providence, 513 A.2d 1 (R.I. 1986); Reynolds v. Zoning Bd. ofReview, 96 R.I. 340, 191 A.2d 350 (1963).
In order to obtain a variance, a party must satisfy the four-prong standard set forth under § 45-24-41(c) which provides in relevant part:
 "(1) That the hardship from which the applicant seeks relief is due to the unique characteristics of the subject land or structure and not to the general characteristics of the surrounding area; and is not due to a physical or economic disability of the applicant. . . . (2) That the hardship is not the result of any prior action of the applicant and does not result primarily from the desire of the applicant to realize greater financial gain; (3) That the granting of the requested variance will not alter the general character of the surrounding area or impair the intent or purpose of the zoning ordinance or the comprehensive plan upon which the ordinance is based; and (4) That the relief to be granted is the least relief necessary."
This standard is also adopted in the Ordinance as § 902.3.
The first prong requires that the hardship to the applicant that would result from the denial of the application for a use variance be due to the unique characteristics of the property. Such a hardship arises when a literal application of the zoning ordinance completely deprives the owner of all beneficial use of the property. Almeida v. Zoning Bd. of Review ofTiverton, 606 A.2d 1318, 1320 (R.I. 1992); see also, R.I. Hosp. TrustNat'l Bank v. East Providence Zoning Bd. of Review, 444 A.2d 862, 864
(R.I. 1982) (stating all beneficial use must be lost warranting grant of variance to prevent confiscatory taking).
In addition to the Legislature's unequivocal statement in § 45-24-41(d) that "[t]he fact that a use may be more profitable or that a structure may be more valuable after the relief is granted is not grounds for relief," the Rhode Island Supreme Court has repeatedly refused to grant relief from a zoning ordinance merely because "a petitioner might be able to use the property in a more profitable manner." OK Properties v. ZoningBd. of Review of City of Warwick, 601 A.2d 953, 955 (R.I. 1992) (citingR.I. Hosp. Trust Nat'l Bank v. East Providence Zoning Bd. of Review,444 A.2d at 864); see also, Gaglione v. DiMuro, 478 A.2d 573, 577 (R.I. 1984) (a "general assertion that a seventy-unit condominium complex would be a more beneficial and profitable use of . . . land than a single-family home development" does not reflect undue hardship); R.I.Hosp. Trust Nat'l Bank, 444 A.2d at 864 (R.I. 1982) (showing that an eighteen-unit apartment building is a more profitable use than a one or two-family home does not demonstrate unnecessary hardship).
A review of the record reveals not only that the Appellees made no showing of hardship whatsoever, but also that the Board never even inquired as to what hardship the Appellees were claiming. Given the fact that the Appellees purchased the Property with full knowledge of its location in an R-2 zone, the only discernible hardship that would result from the Board's denial of the use variance would be the resultant inability to increase the profitability of the Property. However, increased financial gain is not a hardship which merits zoning relief. Consequently, the record evidence fails to even minimally support the Board's finding that increased financial gain was not the sole motivation for the requested zoning relief.
In the instant case, the denial of the requested relief would clearly not deprive the Appellees of all beneficial use of the Property. The Appellees retain the ability to continue to live in one of the four apartments and rent the other three to tenants. Because the record lacks any indication that denial of the requested use variance would deprive the Appellees of all beneficial use, the Board's decision violated the statutory requirements set forth in § 45-24-41(c)(1).
As to the second prong, the applicant must demonstrate that the hardship is not the result of any prior action on the part of the applicant and does not result primarily from the applicant's desire for greater financial gain. Given the Court's determination that the Appellees failed to show any valid hardship that would result from the denial of their requested relief, the Court's analysis of the second prong is unnecessary.
Even assuming the Appellees had established a valid hardship, they would still have to satisfy the remaining prongs of the standard. To satisfy the third prong, the applicant must show that the new use will not alter the character of the surrounding area. With respect to the third prong, § 45-24-41(d)(1) states that "nonconforming use of neighboring land or structures in the same district and permitted use of lands or structures in an adjacent district shall not be considered in granting a use variance." See D'Ordine Son, Inc. v. Zoning Bd. ofReview of East Providence, 79 R.I. 489, 492, 90 A.2d 416, 418 (1952) (stating existence of nonconforming use in adjacent property insufficient to justify zoning relief). It is well settled that "The board is bound by the plain provisions of the ordinance and any attempt to amend it is clearly beyond the powers expressly delegated to the board. Any such change can be brought about only by the body authorized to enact and amend the ordinance." Arc-Lan Co., Inc. v. Zoning Bd. of Review of Townof North Providence, 106 R.I. 474, 476, 261 A.2d 280, 282 (1970) (quotingMatteson v. Zoning Bd. of Review of City of Warwick, 79 R.I. 121, 123,84 A.2d 611, 612 (1951)).
In order to evaluate the Appellants' argument that the Board violated § 45-24-41(d)(1), the following colloquy among Board members is illuminating:
"MR. CARNEVALE: Does Providence need bed and breakfasts?
 CHAIR: Yes, they advertise on the internet. There is a great need especially on the East side. We gave it to Judge Pettine's place, four (4) rooms and we gave it to the place, Dr. Harrington on Hope Street.
 MR. DETTORE: Give them five (5) and the apartment. (Zoning Bd. Tr. at 18).
This portion of the transcript shows that the Board impermissibly relied on the existence of other non-conforming uses in the neighborhood as a basis to conclude that the requested variance would not detrimentally affect the character of the neighborhood. The fact that neighboring property may constitute a non-conforming use bears no relationship to the present application before the Board.
In addition, with the exception of the reduction in the number of guest rooms, the Board failed to address the numerous concerns raised at the public hearing regarding the potential effects of the requested relief on the character of the neighborhood. These concerns included the effect of the transient nature of guests at a bed and breakfast on the stability of the neighborhood and the increased congestion and traffic. Citing familiarity with the Property and the surrounding neighborhood, the Board summarily stated that the variance would not detrimentally affect the character of the neighborhood. Beyond the Board's "familiarity" with the area, the record lacked any reliable evidence to support such a conclusion.
To satisfy the fourth prong, the Appellees must demonstrate that the relief provided by the variance is the least relief necessary to alleviate the hardship. G.L. § 45-24-41(c); Prov. Zon. Ord. Art. IX § 902.3(A)(4). "[T]he burden is on the property owner to establish that the relief sought is minimal to a reasonable enjoyment of the permitted use to which the property is proposed to be devoted." Standish-Johnson Co.v. Zoning Bd. of Review of Pawtucket, 103 R.I. 487, 492, 238 A.2d 754, 757
(1968).
Although the relief granted was somewhat less than the relief requested, the Board's decision to reduce the number of guest rooms from seven to five is not supported by any related rationale. The record fails to establish how the Board determined what would constitute an appropriate number of guest rooms. In the absence of any tangible explanation, the Court finds the reduction completely arbitrary, because it was not supported by any reliable, probative, or substantial evidence of record.
 Findings of the Board
Pursuant to § 45-24-61, the zoning board of review is required to "include in its decision all findings of fact and conditions." In VonBernuth v. Zoning Bd. of Review of Town of New Shoreham, 770 A.2d 396, 401
(R.I. 2001), the Rhode Island Supreme Court instructed:
 "[The court] must decide whether the board members resolved the evidentiary conflicts, made the prerequisite factual determinations, and applied the proper legal principles. Those findings must, of course, be factual rather than conclusional, and the application of legal principles must be something more than the recital of a litany." (citing Irish P'ship v. Rommel, 518 A.2d 356, 358-59 (R.I. 1986)).
"[T]here should be something in the decision to inform [the reviewing court] of the grounds and basis [of the decision.]" Del Toro v. ZoningBd. of Review of Bristol, 82 R.I. 317, 321, 107 A.2d 460, 462 (1954).
In Resolution 8630, the Board made numerous hollow findings of fact, including:
 "(2) That the relief requested is the least relief necessary in order to establish the bed and breakfast.
 (3)The Board further finds that the hardship is not the result of any prior action of the Applicant and does not result primarily from the desire of the Applicant to realize greater financial gain. No testimony or evidence was received by the Board to refute this assertion." Despite the Board's statement that it based these "findings" on the inspection of the property and surrounding neighborhood, as well as the testimony offered at the public hearing, the resolution was entirely devoid of any substantive evidentiary support. As such, the findings are nothing more than an attempt to give lip service to the statutory requirements necessary to obtain a use variance.
The best evidence in the record to support the Court's conclusion is found in the transcript of the Board deliberations following the public hearing:
 "CHAIR: Who am I to say I think [six guest rooms and one apartment] is [too many units] and the question is did they establish the standard that they cannot use their house. . . .
 MRS. CASTRO: Give them five [guest rooms].
 MR. CATAURO: Five (5) [guest rooms] and one (1) [apartment].
 MR. CARNEVALE: It should be denied because they didn't establish the standard. It's up to you.
 CHAIR: Well, it is an R-2 zone, but it's also a neighborhood that has a need for that kind of use." (Zoning Bd. Tr. at 16.)
The Board's deliberations reveal that the members recognized that the Appellees had not met the statutory requirements to obtain a use variance for the Property. Nevertheless, the Board unanimously granted the use variance based on the respective members unsubstantiated opinions that the neighborhood had a need for the proposed non-conforming use. Unfortunately, the standard for granting a use variance does not factor "need" into the analysis.
After a review of the entire record, including the Board's written decision and the incorporated findings of fact, the Court finds that the Board's decision merely regurgitates the standard of review and wholly lacks any meaningful analysis of that standard. Additionally, the Court holds that the granting of the use variance was arbitrary and capricious and an abuse of the Zoning Board's discretion.
Given that the Board ignored the fact that the Appellants did not satisfy the relevant standard and unanimously granted the use variance, the Board's decision was not only a violation of the statutory standard, but also clearly erroneous and unsupported by substantial evidence in the whole record. See G.L. 1956 § 45-24-69; Melucci v. Zoning Bd. of Reviewof the City of Pawtucket, 101 R.I. 649, 652, 226 A.2d 416, 418 (1967);Del Toro, 82 R.I. at 321, 107 A.2d at 462. Accordingly the Providence Zoning Board of Review's grant of the use variance in Resolution #8630 is hereby reversed.
 CONCLUSION
For the reasons stated above, this Court denies the Appellees' motion to dismiss and reverses the decision of the Providence Zoning Board. This Court finds that the Board's grant of a use variance was unsupported by the reliable, probative, and substantial evidence of record, was arbitrary and capricious, in violation of Ordinance provisions, and constituted an abuse of the Board's discretion. Counsel shall submit the appropriate order for judgment.
[1] Because the Appellees proposed no changes to the exterior, they were not required to obtain the approval of the Providence Historic District Commission ("HDC"). Nevertheless, the Appellees testified that they sent the HDC notice of the Board's hearing. (Zoning Bd. Tr. of August 20, 2002 at p. 5.)
[2] Section 45-24-69(a) requires the Board to "file the original documents acted upon by it and constituting the record of the case appealed from, or certified copies, together with other facts that may be pertinent, with the clerk of the court within thirty (30) days after being served with a copy of the complaint." Nevertheless, the Court never received a complete copy of the certified transcript until it submitted a formal request to the Board in October 2004.
[3] Section 45-24-53(c)(2) requires "written notice of the date, time, and place of the public hearing and the nature and purpose of the hearing shall be sent to all owners of real property whose property is located in or within not less than two hundred feet (200') of the perimeter of the area proposed for change, whether within the city or town or within an adjacent city or town. The notice shall be sent by registered or certified mail to the last known address of the owners, as shown on the current real estate tax assessment records of the city or town in which the property is located."
[4] It is unclear from the record whether the notice addressed to 40 North Court Street was one of the five notices also returned in conjunction with the initial public hearing before the Zoning Board.