Joan J. ALMEIDA

v.

**ZONING BOARD OF REVIEW OF the TOWN OF TIVERTON.**

No. 90–608–M.P.

Supreme Court of Rhode Island.

April 29, 1992.

Joseph E. Marran, Jr., Pawtucket, for plaintiff.

James A. Donnelly, Jr., Tiverton Town Sol., for defendant.

## OPINION

MURRAY, Justice.

This case is before the court on the petition of Joan J. Almeida (Almeida) for certiorari to review a Superior Court judgment affirming a decision of the Tiverton Zoning Board of Review (the board). The board denied the petitioner's request for a variance and upheld the Tiverton building inspector's order to cease and desist certain construction on the petitioner's property. For the reasons set forth herein, we affirm the judgment of the Superior Court.

The following facts are established by the record. In 1986 Almeida was interested in purchasing property at 56 Lucy Avenue in Tiverton, Rhode Island, and constructing a home on that property. The parcel of land, designated as lot No. 56 on tax assessor's plat No. 171, is located in an R–40 residential zone, which, according to the applicable zoning ordinance, permits only single-family dwellings.[1] Prior to purchasing the property, Almeida entered into communications with Walter Borden (Borden), who was at that time the Tiverton building inspector.

On April 23, 1986, Almeida purchased the property at 56 Lucy Avenue. Almeida, who is handicapped, planned to construct a ranch-style home with an "in-law apartment" in the basement of the home. The purpose of that apartment was to allow her brother to live with her and assist her, but also to afford him some privacy. The apartment was to consist of a "bedroom, a bathroom, and a family room, with a kitchen area to be equipped with a sink, refrigerator, bar, cabinets, and stove." Almeida stated that after she purchased the property she submitted a set of plans to this effect to Borden.

After purchasing the property, Almeida hired the Red Cap Construction Company (Red Cap). Upon obtaining a building permit, Red Cap commenced construction of the home in December 1986. In January 1987 Red Cap was either fired or walked off the job, at which time construction was only partially complete.

In April 1987 Borden was replaced as building inspector by Wilford Eccles (Eccles). Due to problems with construction, Eccles had occasion to visit the building site. A perusal of the building plans during one of his visits convinced Eccles that if the plans were followed, the structure would constitute a home with a "definite kitchen downstairs, which would in [his] estimation, cause it to be an in-law or second apartment." The structure would constitute a multifamily dwelling, which would violate the zoning ordinance. Eccles told Almeida that she would need to obtain a variance in order to lawfully build the basement apartment, and that she would need a new building permit because the original one was issued to Red Cap. Eccles entered a cease-and-desist order but later allowed

---

1. *See* art. II, sec. 1 of the Tiverton Zoning Ordinance.

Almeida to continue construction, except for the kitchen or "cooking area" planned for the basement apartment.

On June 22, 1987, petitioner applied to the zoning board for a variance from the requirements of the zoning ordinance. After hearing testimony at the public hearing, the zoning board denied the application for a variance and upheld the cease-and-desist order precluding the construction of a basement apartment. The board determined that petitioner had failed to meet the requirements to obtain a variance because no special conditions existed and that no evidence was presented to demonstrate that unnecessary hardship would result upon petitioner's adherence to the zoning ordinance. On September 29, 1987, petitioner filed a complaint in the Newport County Superior Court, which affirmed the decision of the zoning board. The trial justice concluded that there was ample evidence in the record to support the zoning board's decision. On December 21, 1990, petitioner filed a petition to this court for a writ of certiorari, which we granted on May 23, 1991. Additional facts will be set forth as necessary.

On review petitioner argues that she is entitled to relief because (1) special conditions exist which make literal enforcement of the zoning ordinance an unnecessary hardship and (2) petitioner relied to her detriment on the building permit issued to her by the former Tiverton building inspector in commencing construction of the structure and revocation of that permit would be unjust.

■ The petitioner is entitled to a variance only upon a showing that literal adherence to the zoning ordinance will result in unnecessary hardship to petitioner and that the granting of the variance would not be contrary to the public interest. General Laws 1956 (1991 Reenactment) § 45–24–19(1)(c); *see Gaglione v. DiMuro,* 478 A.2d 573, 576 (R.I.1984); *Rhode Island Hospital Trust National Bank v. East Providence Zoning Board of Review,* 444 A.2d 862, 864 (R.I.1982). Unnecessary hardship exists when literal application of the zoning ordinance completely deprives an owner of all beneficial use of his property and when granting a variance becomes necessary to prevent an indirect confiscation of the property without compensation. *Rhode Island Hospital Trust National Bank,* 444 A.2d at 864. That petitioner would be precluded from using the property in a more profitable manner if the variance is denied is not of itself proof of unnecessary hardship amounting to confiscation. *Id.*

Section 45–24–20 grants to the Superior Court the power to review the denial by a zoning board of an application for a variance. Section 45–24–20(d) states in part:

"The [Superior] [C]ourt shall not substitute its judgment for that of the zoning board as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions, or decisions which are:

\*        \*        \*        \*        \*        \*

(2) In excess of the authority granted to the zoning board by statute or ordinance;

\*        \*        \*        \*        \*        \*

(5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or

(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."

On petition for certiorari to this court we must examine whether the trial justice acted within his or her authority under § 45–24–20. *Felicio v. Fleury,* 557 A.2d 480, 481 (R.I.1989) (citing *Hardy v. Zoning Board of Review of Coventry,* 119 R.I. 533, 541, 382 A.2d 520, 525 (1977)). In reviewing the trial justice's decision, we do not weigh the evidence but rather determine whether there existed competent evidence to support the decision. 557 A.2d at 481–82. That decision will not be disturbed unless it can be shown that the trial justice "misapplied the law, misconceived or over-

looked material evidence, or made findings that were clearly wrong." *R.J.E.P. Associates v. Hellewell,* 560 A.2d 353, 354 (R.I. 1989).

██ ██ The petitioner bears the burden of proving by probative evidence that being restricted to the permitted uses within the zoning ordinance will deprive her of all beneficial use of her property. A review of the evidence convinces us that petitioner has failed to meet this burden. At the hearing Eccles stated that Almeida was permitted to construct a basement apartment. However, she was not permitted to install a stove in that apartment because the inclusion of a stove would create a separate dwelling unit barred by the zoning ordinance. Almeida's testimony at that hearing is dispositive on the issue of unnecessary hardship:

"MRS. ALMEIDA: There was going to be a stove. If they don't want a stove, I don't have any objections to that. [My brother] just wanted to have a little bit of privacy; that was the main thing.

"MR. MARRAN: So, if this Board saw fit to grant your permit with the exception of not permitting a stove in there, would that be satisfactory to you?

"MRS. ALMEIDA: Fine."

Since Almeida in essence acquiesced to the omission of the stove from the basement apartment, we conclude that no hardship would occur from such omission. Furthermore, Almeida testified that the house has been completed and that her brother occupies the basement apartment, although he does not enjoy cooking facilities. Thus petitioner has not demonstrated a complete loss of all beneficial use of the property as a result of the denial of her application for a variance. Accordingly petitioner's assertion of unnecessary hardship is not supported by competent evidence and she is not, therefore, entitled to a variance. Hence we conclude that the Superior Court justice acted within the authority granted under § 45–24–20. There was substantial evidence presented to support the trial justice's decision upholding the denial of a variance by the Tiverton Zoning Board of Review. The trial justice did not misapply

the law, misconceive or overlook material evidence, or make findings that were clearly wrong.

The petitioner also contends that because she relied to her detriment on the building permit issued to her by the former Tiverton building inspector, revocation of that permit would be unjust. Almeida relies on our decision in *Shalvey v. Zoning Board of Review of Warwick,* 99 R.I. 692, 210 A.2d 589 (1965), to support her contention that because of her detrimental reliance, the zoning board is estopped from preventing her from installing a stove in the basement apartment. The petitioner's reliance on *Shalvey,* however, is misplaced.

██ *Shalvey* addresses the issue of whether a building permit lawfully issued should be immune to impairment or revocation by reason of a subsequent change in the zoning ordinance when the permittee acting in good-faith reliance commenced construction to some substantial degree. In the present case, if the former building inspector did, in fact, issue a permit to petitioner for construction of a basement apartment with a kitchen, that permit was unlawfully issued. As previously noted, the land in question is zoned only for single-family dwellings. Thus the permit relied upon by petitioner was illegally issued. As we stated in *Shalvey* with respect to permits illegally issued, an appropriate municipal officer will not be estopped from nullifying such permit even though the permittee has acted pursuant to the permit. *Id.* at 700, 210 A.2d at 594. Thus we conclude that Eccles acted properly in revoking that portion of the permit that authorized installation of a kitchen, despite the fact that Almeida relied on said permit.

At the September 2, 1987 public hearing before the zoning board, Almeida testified that Borden verbally represented to her that "it was okay" to construct "a family room and a bedroom and a bathroom" in the downstairs of the home she intended to build on the subject property. Almeida claims that on the advice of her attorney she sent Borden a letter confirming that conversation. However, this letter could not be located in the town files. Almeida's

own copy of the letter was submitted to the zoning board at the public hearing.

Thus we are not convinced that Almeida was issued a building permit authorizing her to construct a basement apartment equipped with a kitchen. Although Almeida claims that she sent Borden a letter confirming communications to that effect, there is no proof that the letter was ever received by the town. Also, Eccles was unable to locate a set of building plans allegedly approved by Borden. It is not clear from the record what was authorized by the original building permit, and there is no reference to the installation of a stove or cooking area. Thus we believe that, in light of the evidence presented, the zoning board acted properly in upholding the cease-and-desist order as to the installation of the stove. The trial justice therefore correctly affirmed the board's decision pursuant to § 45–24–20. The evidence presented supports the trial justice's decision to affirm the board's decision upholding the cease-and-desist order.

For the reasons stated, the petition for certiorari is denied, the writ heretofore issued is quashed, and the record certified to this court is remanded to the Superior Court with our decision endorsed thereon.