DECISION
Before this Court is the appeal from a decision of the Providence Zoning Board of Review ("Board"). Nicolas Delvicarino, Betty Ann Delvicarino, Garnet Hatcher, Gloria Martellino, Vladimir Peskin, Nina Peskin, Antonette M. Sammartino, and George Steele ("appellants") seek reversal of the Board's decision of April 18, 2000 granting the application of Chung Hing Lau and the Italo-American Club of Rhode Island ("appellees") for a use variance, a special use permit, and a dimensional variance. This Court has jurisdiction pursuant to R.I.G.L. § 45-24-69.
 Facts and Travel
Appellees are the owners of Lots 661, 108, 109, and 126 in the C-1 Limited Commercial District ("C-1 District") on the Providence Tax Assessor's Plat 28. Appellee Lau recently purchased Lots 108, 109, and 126 from the Italo-American Club and thus, he was the sole applicant for this relief from the Board. He filed an application with the Providence Zoning Board of Review seeking relief from §§ 201.8, 303-use code 57.1, 304, 701, and 703.2 of the Providence Zoning Ordinances ("ordinances").[1] Appellee Lau sought to renovate the two existing buildings on Lots 661 and 109 into a 160 seat, 3,245 square foot restaurant. He also planned to build and attach a three-story 3,646 square foot addition to an existing structure on Lot 109 and to convert the bungalow located in the rear of Lot 661 into a retail specialty market.
The use variance was needed because the square footage of the restaurant Appellee Lau sought to operate at that location exceeded the 2500 square feet otherwise permitted in a C-1 district for a restaurant. A dimensional variance was necessary to accommodate the rear yard set back requirements and because his plan could support only 48 parking spaces instead of the 50 spaces required in § 703.2 of the Ordinances. Finally, Lau's plan required a special use permit to allow for the location of the proposed parking area on Lot 126, which is located in a residential zone.
A public hearing was held on April 18, 2000. The Board heard evidence and expert testimony from the parties. Mr. Daniel Peloquin, an architect; Mr. James Salem, a traffic expert; Mr. Thomas Andolfo and Mr. Salvatore Moio, both real estate experts; Appellee Lau, and several abutters testified at the hearing. Those in favor of the project, including Mr. Peloquin, Mr. Salem and Mr. Lau, testified as to the details and scope of the proposed, scaled-down plan and that there would not be any additional traffic hazards or congestion. Those in opposition, including Mr. Andolfo, Mr. Moio and the abutters, emphasized the fact that Mr. Lau would not suffer any hardship if the variances were not granted, that other alternatives uses for the property exist, that the proposed project would alter the character of the historic neighborhood, that the proposal was too large as compared with the rest of the area, and that increased traffic from the restaurant and market would be a hazard to the area. The Department of Planning and Development presented its opinion with no objection to the proposed plan. After considering the evidence before it, the Board unanimously granted the use and dimensional variances and the special use permit. The Board found that 160 seats in two buildings remodeled into one building is preferable to the 130 seats in one building formerly known as the Italo-American Club. The Board issued a written opinion on June 29, 2000.
The appellants timely filed this appeal on July 18, 2000. On appeal, they argue that in granting the dimensional variance and special use permit, the Board violated state statutes and City of Providence Ordinances. Additionally, the appellants argue that the Board erred in granting the use variance because appellees did not present probative evidence that they would be deprived of all beneficial use of the property if the variance were not granted.
 Standard of Review
General Laws § 45-24-69(D), which directs this Court in its review of a decision of the zoning board of review on appeal, provides:
 "(D) The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions or decisions which are:
 (1) In violation of constitutional, statutory or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
This Court must determine, upon review of the record that substantial evidence exists to support the Board's decision. Salve Regina College v.Zoning Bd. of Review, 594 A.2d 878, 880 (R.I. 1991). "Substantial evidence as used in this context means such relevant evidence that a reasonable mind might accept as adequate to support a conclusion and means an amount more than a scintilla, but less than a preponderance."Caswell v. George Sherman Sand and Gravel Co., Inc., 424 A.2d 646, 647 (R.I. 1981) (citing Apostolou v. Genovesi, 120 R.I. 501, 507, 388 A.2d 821, 824-5 (R.I. 1978)). Furthermore, this Court cannot substitute its judgment for that of the Board, but must uphold a decision supported by substantial evidence contained in the record. Mendonsa v. Corey,495 A.2d 257 (R.I. 1985).
 Dimensional Variances and Special Use Permits
The appellants argue that the Board was without authority under the ordinances to grant a special use permit in conjunction with a dimensional variance because in order for the Board to grant a dimensional variance, the owner of the property must have "no other reasonable alternative to enjoy a legally permitted beneficial use" of that property and a special use is not a legally, but a conditionally permitted use. See § 902.3(B)(2). In response, the appellees argue that because the Board declared that two restaurants occupying 5000 square feet of space (2500 square feet each) as permitted in a C-1 zone are equivalent to one restaurant occupying 5000 square feet, the latter is as much of a legally permitted use as the former.
Relief from the dimensional requirements set out in the ordinance may be sought when an applicant intends to use his/her property for a permitted use allowed by the ordinance. For the Board to grant dimensional relief, an applicant must show the Board "that the hardship that will be suffered by the owner of the subject property if the dimensional variance is not granted shall amount to more than a mere inconvenience, which shall mean that there is no other reasonable alternative to enjoy a legally permitted beneficial use of one's property." § 902.3(B)(2);See von Bernuth v. Zoning Board of Review of the Town of New Shoreham,770 A.2d 396, 401 (R.I. 2001); Sciacca v. Caruso et al., 769 A.2d 578, 583 (R.I. 2001) (interpreting G.L. § 45-24-41). Thus, in cases wherein dimensional relief is sought for a particular use, there must be no reasonable alternative to that use and it must be legally permitted by the ordinance.
The appellees argue that this Court should not apply our Supreme Court's interpretation of state law in Sciacca and von Bernuth to their application. They rely on case law which advocates that a court rely on common sense and reason as the Board did in its decision, rather than applicable case law and statutes if the needs of a contemporary society are better served by the former.[2] (See Appellee Lau's Brief at 8-9.)
Before granting the dimensional variance, the Board had to determine whether the appellees proved that no other reasonable alternative existed for them to enjoy a legally permitted use. Based on a review of the record and the Board's decision, this Court finds that reasonable alternatives for this property did exist. In fact, the Board noted that the appellees could have operated two legally permitted restaurants on the property, thus acknowledging that there were reasonable alternatives for legally permitted uses of the property. In its decision, the Board did not focus on the appellees' burden for a dimensional variance as presented by the Rhode Island Supreme Court in von Bernuth and Sciacca. The Board concluded that "there [was] no difference between the existing use and the proposed use" because the appellees could have legally created two separate restaurants with more seats within the square footage of the two buildings on the property and the proposed use allowed for only 30 seats more than the existing use serves. (Decision at 5.) It determined that one restaurant on the property with 160 seats was more beneficial than two separate restaurants with combined seating totaling more than 160 seats. Id.
Although the Board has the authority and discretion to grant permits and to use their considerable knowledge gained through experience, it may not grant relief simply because, in the Board's opinion, a proposed land use may have less of an impact on the C-1 zone than other legally permitted options. (Chase, Rhode Island Zoning Handbook, § 77 at 86 (1993)). Pursuant to Sciacca and von Bernuth, a dimensional variance must not be granted unless "there is no other reasonable alternative to enjoy a legally permitted beneficial use of one's property." See § 902.3(B)(2) (Emphasis added.) Because the Board did find that there were alternative uses for the property, it committed error when it granted the appellees the dimensional variance.
Furthermore, dimensional variances can be granted in conjunction with permitted uses as allowed in § 303 of the use regulations. However, the Rhode Island Supreme Court has held that unless an ordinance otherwise provides, "[t]he ordinance is unambiguous and imperative in requiring that a special use meet all the criteria authorizing such special use" and thus, "a dimensional variance [can]not be granted in conjunction with the issuance of a special-use permit." Newton v. ZoningBoard of Review of City of Warwick, 713 A.2d 239, 242 (R.I. 1998).
Regarding special use permits, § 902.4 of the ordinances authorizes the Board to approve these permits where they are permitted by the use regulations chart set out in § 303, after consulting the opinion of the Department of Planning and Development and after finding that the special use "will not substantially injure the use and enjoyment of nor significantly devalue neighboring property" and "will not be detrimental or injurious to the general health, or welfare of the community." § 902.4(A)(B)(1)-(3). This section also requires that the special use "compl[y] with any conditions set forth" in the ordinance.
The Providence City ordinances do not specifically allow dimensional variances and special use permits to be issued in conjunction with each other and thus, pursuant to Newton, the Board was without authority to do so. Furthermore, the appellees' proposed plan requires a special use permit to allow for a parking area in a residential zone. The use is permitted by the Board by special application, only if it meets the conditions set forth in the applicable sections of the ordinance. See
§ 902.4. If the alternative is true and the appellees' special use does not meet the conditions imposed by the ordinances, that use as proposed by the appellees is not legally permitted.
The ordinance requires that a restaurant of the capacity that the appellees propose provide 50 parking spaces. See § 703.2. Because the appellees' plan includes only 48 spaces, the plan does not comply with the parking conditions set out in the ordinance, necessitating the request for a dimensional variance. However, this request for dimensional relief disqualifies the appellees' proposed plan from eligibility for a special use permit because that plan does not comply with the conditions for parking as set out in the ordinance. Therefore, this Court finds that the Board erred in granting the special use permit which did not comply with the conditions set forth in the ordinance in conjunction with the dimensional variance.
 Use Variance
Additionally, in arguing that he was entitled to a variance to operate a restaurant larger than 2500 square feet in a C-1 zone, Appellee Lau argues that the issue is not one of "use," because the property is currently used as a restaurant, but one of "dimension" because he seeks to operate a larger restaurant than is allowed by the ordinance. He asks this Court to apply the lesser standard involved in a request for a dimensional variance as opposed to that for a use variance.
"Use" is defined as the "purpose or activity for which land or buildings are designed, arranged, or intended, or for which buildings are occupied or maintained." (Chase, Rhode Island Zoning Handbook, § 62 at 66 (1993) (citing G.L. § 45-24-31(60))).
An applicant should request a use variance for his or her property if "the proposed use of the property varies from any of the uses permitted under the ordinance for that zoning district." (Chase, Rhode IslandZoning Handbook, § 126 at 144 (1993) (Italics in original.)) In his application to the Board, Appellee Lau requested a use variance to operate a restaurant larger than is legally permitted by the ordinances. In fact, in the summary of facts in his memorandum to the Court on this matter, Appellee Lau stated that he "require[d] a use variance because a restaurant in excess of 2,500 square feet gross floor area is not otherwise permitted in the C-1 District." (Appellee Lau's Mem. at 2.) Thus, Appellee Lau's request for a use variance from the Board was the appropriate relief.
In order for a Board to grant a use variance, an applicant must prove that "the subject land or structure cannot yield any beneficial use if it is required to conform to the provisions of this Ordinance." § 902.3(B)(1); See Almeida v. Zoning Bd. of Review of the Town ofTiverton, 606 A.2d 1318, 1320 (R.I. 1992). The Board should consider whether the denial of the request would deprive the owners of all beneficial use of their property so as to amount to a confiscation of the property. Rozes v. Smith, 120 R.I. 515, 388 A.2d 816 (1978).
The record is devoid of testimony that all beneficial use of the property would be destroyed if the appellees were denied a use variance. Mr. Moio, the real estate expert for the objectors, testified that the Board's denial of a use variance on this plan would not deprive the appellees of all beneficial use. (Tr. at 47.) The Board chose to give little credence to Mr. Moio's testimony due to his lack of familiarity with the application and ordinances. (Decision at 5.) However, Mr. Andolfo, the real estate expert for the appellees, testified to his familiarity with the regulations and that "the Applicants [appellees] would not lose all beneficial use of their property if the Board were to deny the Application." (Decision at 3.) He also noted that there were other alternative uses for the property. (Tr. at 21.)
Although required to by § 902.3(A) of the ordinances, the Board did not make any explicit findings that the property could not yield any beneficial use if a use variance were denied, and there is no evidence in the record demonstrating that the appellees met that burden. The Board's findings that the effect on the zone would be the same whether the appellees located two legally permitted, separate restaurants on the property or one restaurant over 2500 square feet in area and that Appellee had scaled back his original proposal to accommodate the abutters' concerns do not support the granting of a use variance. (Decision at 5.) These considerations do not satisfy the elements of the use variance as required under § 902.3. Therefore, this Court finds that the Board's granting the appellees a use variance to allow a restaurant with over 2500 square feet in area in a C-1 zone was clearly erroneous.
 Conclusion
After a review of the entire record, this Court finds that the Board's decision to grant the appellees a use variance, dimensional variance, and a special use permit to allow them to proceed with their proposed plan was in violation of statutory and ordinance provisions, in excess of authority, affected by error of law, and erroneous in view of the evidence in the record. Substantial rights of the appellants have been prejudiced. Accordingly, the decision of the Board is reversed.
Counsel shall submit the appropriate order for entry in accordance with this opinion.
[1] Appellee Lau filed a previous application with the Board, detailing a more extensive proposal for his property. That plan was modified and scaled back in order to address the concerns and objections of the neighbors.
[2] Appellee Lau relies on Digby v. Digby, 120 R.I. 299, 301-03,388 A.2d 1, 2-3 (1978) to encourage this Court to "reexamine judicially created rule and public policy behind such rule if inconsistent with needs of contemporary society." Advocating that this Court ignore the precedent set by the Rhode Island Supreme Court in von Bernuth andSciacca, he also presents these quotes from a Connecticut case, Georgev. Ericson, 736 A.2d 889, 894 (Conn. 1999): "[e]xperience can and often does demonstrate that a rule, once believed sound, needs modification to serve justice better," "[a] court, when once convinced that it is in error, is not compelled to follow precedent," and "courts must have and exert the capacity to change a rule of law when reason requires."