DECISION
Before this Court is the appeal of Karning Bedrosian, Edna Bedrosian, and Hour Houey and Hour's Auto Service, Inc. ("Appellants") from a decision of the Providence Zoning Board of Review (the "Board"), denying Appellants' application for a use variance. Appellees John Kelly, Arther Strother, Anthony Catauro, Scott Wolf, Daniel Varin and Andrea Underwood are members of the Zoning Board of Review ("Members of the Board"). Jurisdiction is pursuant to G.L. 1956 § 42-24-69.
 I Facts and Travel
The subject property is located at 270 Reservoir Avenue, in the City of Providence, County of Providence, State of Rhode Island, and designated as Assessor's Plat 61, Lot 604, (the "Property"). Karnig Bedrosian and Edna Bedrosian (the "Bedrosians") have been owners of record of the Property since 1991, and Hour Houey *Page 2 
and Hour's Auto Service, Inc. are lessees of the Property and prospective purchasers pursuant to a purchase and sale agreement for the Property that includes an application for a use variance on the Property. The Property is located in an R-1 Residential One-family Zone, where repair services are disallowed under § 303, Article III of the Providence Zoning Ordinance.[1]
In a formal hearing held on April 18, 2006, the Board heard Hour Houey and Hour's Auto Service, Inc.'s ("Applicant") application for a use variance to operate "repair services — an automotive service station, use code 303 (45)"[2] (without the sale of gasoline) on the Property, listing a "used car lot with no major auto work" as the present legal use of the premises at the time of the application. See Applicant's Application for Variance, January 20, 2006, at 1. At the hearing, a representative for the Applicant presented arguments and submitted documentary evidence, and testimony was heard from individuals who live within the immediate area of the Property. Applicant's representative noted that the Applicant did not attend the hearing due to a mistake on the date.
At the hearing, the representative for the Applicant argued that its application is for "probably the most minor use variance," because the current legal non-conforming use of the property is for a used car lot which also entails an auto repair shop. (Tr. at 23; *Page 3 
Applicant's Application at 1.) The Applicant's representative further argued that the Applicant does not want to sell cars and wants to perform only minor repairs, such as oil changes, tires, and exhaust systems; however, he does not want to perform major repairs like body work, engine or transmissions. (Tr. at 23-24, 29.) Applicant represented that he does not encourage overnight storage of vehicles on the lot and is aware of waste disposal regulations. (Tr. at 29.) When the Board inquired as to safety for fire engine traffic, Applicant's representative responded that he believes there is ample parking within the perimeter of the Property for daily use by whoever may have come in for repairs. (Tr. at 27-28.)
At the hearing, a resident living across the street from the Property at 248 Roger Williams Avenue, Scott Voner ("Mr. Voner"), testified that he has been a resident at the above location for six years. (Tr. at 33.) Mr. Voner testified that in that time, the Property has always been closed, and he never saw a car sold out of the Property. Id. He offered that the fire station "got cars out there and it's a busy intersection because you have Cumberland Farms, you have a repair shop already on the other side, and there's a little shopping complex with the fire station here . . . [i]t's a hard time for the fire trucks to be moving back and forth." (Tr. at 33-34.) He also testified that "there will be tires and junk cars on that side. We don't need anything to bring down the neighborhood down any further . . . For safety reasons, I don't think it would be a good thing." (Tr. at 34.)
Another resident, Mr. Edward Hooks ("Mr. Hooks"), testified that in February he was "standing at Cumberland Farms [and] watched the fire trucks trying to come out and there were cars parked along the side and there were cars that were stopped at the light. *Page 4 
This prevented the fire truck from making the swing out to go answer their call." (Tr. at 34-35.) Mr. Hooks found cars being repaired on the Property, with "no licenses anywhere to be found," and inquired at City Hall but found there was no business license for the Property. (Tr. at 34-35.) He expressed concern over his grandchildren who walk to school nearby. (Tr. at 35.) Mr. Hooks also testified that "there are a number of cars on that lot that have been there for not one, not two, not three, but I would say over five nights, the same vehicle," and "there are cars in that lot in different types of condition . . . I don't want to say that there are some with fenders off and the like, although there are." (Tr. at 36-37.) Applicant's representative responded that "on Roger Williams Avenue across from the fire station . . . we don't know if that's the customers of my clients or if it's people going to the fire station or neighbors or what." (Tr. at 38.) Applicant's representative also responded that he was advised by the Bedrosians that there was a proper license for the Property and there is a current secondhand license on the Property through May that includes car sales. (Tr. at 39.)
Upon completion of the hearing, the Director of Inspections and Standards for the City of Providence, Mr. George Farrell ("Mr. Farrell"), noted that the Property has been "on and off a repair shop over the years. I worked in that building. It's always been a problem with in and out . . . I believe most of the parking in that area is no parking. The cars that do park there are never the firefighters' cars . . . It's very very tight . . . It's always been an eyesore. . . ." (Tr. at 40.) The Board denied Applicant's application.
The Board rendered its decision on November 1, 2006. The Board considered the testimony given at the hearing and the written opinion of the City of Providence, Department of Planning and Development (the "DPD") to make findings of fact and *Page 5 
conclusions of law. Providence Zoning Board of Review Resolution No. 9068 (the "Board's Decision"), Nov. 1, 2006, at 2-3. The Board found that "the standards set forth at Section 902.3 have not been met . . . [Applicant's testimony] clearly does not indicate that all beneficial use of the Property would be lost by the denial of this request. In fact, the appellant gave no testimony indicating that all beneficial use of the Property would be lost if the Board were to deny the application" and require that the Property conform to the zoning ordinance provisions. Id. Further, the Board found that "[n]othing in the record or in the testimony that was presented to the Board indicates that there is a hardship from which the Applicant seeks relief that is due to the unique characteristics of the subject land or structure," and "no evidence was offered showing the hardship is not the result of any prior action of the Applicant and does not result primarily from the desire of the owner to realize greater financial gain." Id. The Board concluded that "just because a previous nonconforming use existed at the Property does not justify a further departure from which the current zone allows." Id. The Board therefore denied Applicant's application, noting that "just because a parcel of land enjoyed `grandfather rights' does not justify the change and creation of another nonconforming use."Id.
The Appellants timely appealed the Board's decision on the grounds that the Board erred in finding that the standards of § 902.3 had not been met, erred in making inappropriate and groundless conclusions regarding parking and maintenance of the Property, and erred in finding that Appellants' application was more than a continuance of a prior legal nonconforming use on the Property that had not been abandoned. Appellants' appeal is currently before this Court. Decision is herein rendered. *Page 6 
 II Standard of Review
Rhode Island General Laws 1956 § 45-24-69 authorizes this Court to review a decision of a zoning board. Section 45-24-69(d) provides in relevant part:
 The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions, or decisions which are:
 (1) In violation of constitutional, statutory, or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
When reviewing a decision of a zoning board, the trial justice "may `not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact." ` Curran v. ChurchCommunity Housing Corp., 672 A.2d 453, 454 (R.I. 1996) (quoting G.L.1956 § 45-24-69(d)). The trial justice "must examine the entire record to determine whether `substantial' evidence exists to support the board's findings." DeStefano v. Zoning Bd. of Review of Warwick, 122 R.I. 241,245, 405 A.2d 1167, 1170 (1979). " `Substantial evidence . . . means such relevant evidence that a reasonable mind might accept as adequate to support a conclusion and means an amount more than a *Page 7 
scintilla, but less than a preponderance." ` Lischio v. Zoning Bd. ofReview of the Town of North Kingstown, 818 A.2d 685, 690 n. 5 (R.I. 2003) (quoting Caswell v. George Sherman Sand and Gravel Co., Inc.,424 A.2d 646, 647 (R.I. 1981)).
 III Analysis A. Requirements for Granting of a Use Variance
Section 61(i) of Rhode Island General Laws 1956 § 45-24-31 defines a use variance as "[p]ermission to depart from the use requirements of a zoning ordinance where the applicant for the requested variance has shown by evidence upon the record that the subject land or structure cannot yield any beneficial use if it is to conform to the provisions of the zoning ordinance." In conformance with G.L. § 45-24-41, the Providence Zoning Ordinance provides that applicants must meet a five-pronged standard for granting of a use variance. Prov. Zon. Ord. Art. IX, § 902.3; G.L. § 45-24-41.
The five-pronged standard for granting of a use variance requires that petitioners provide evidence showing that (1) the hardship from which the applicant seeks relief is due to the unique characteristics of the subject land or structure and not to the general characteristics of the surrounding area, and not due to a physical or economic disability of the applicant; (2) that the hardship is not the result of any prior action of the applicant and does not result primarily from the desire of the applicant to realize greater financial gain; (3) that the granting of the requested variance will not alter the general character of the surrounding area or impair the intent or purpose of this Ordinance or the Comprehensive Plan; (4) that the relief to be granted is the least relief necessary; and that *Page 8 
(5) the subject land or structure cannot yield any beneficial use if it is required to conform to the provisions of this Ordinance. Prov. Zon. Ord. Art. IX, § 902.3.
In the instant case, Appellants argue that the Board erred in finding they did not meet requirements of § 902.3. The Appellants contend that since the license for use of the Property as an automobile dealership has lapsed and new regulations require a 2,400 square foot minimum for automobile dealerships, denial of the use variance imposes a "burden beyond that which the zoning ordinance requires." Appellant's Mem. of Law at 4-5. However, with respect to the first prong of the five-prong standard for granting a use variance, the hardship from which the applicant seeks relief must be due to the unique characteristics of the subject land or structure. Prov. Zon. Ord. Art. IX, § 902.3. Appellants assert that the structure on the Property is unique because it is an office of approximately 1,296 square feet that is not suitable for residential purposes. Although some economic hardship may be involved in demolishing the structure currently on the Property and erecting another in compliance with R-1 requirements, such a cost does not amount to a hardship due to the unique characteristics of the structure. SeeGaglione v. DiMuro, 478 A.2d 573 (R.I. 1984); see also Rhode IslandHospital Trust v. East Providence Zoning Board of Review, 444 A.2d 862,864 (R.I. 1982) (hardship sufficient for a variance was not found where appraiser stated the "optimum use" would be for an eighteen-unit apartment building and the cost of a one or two-family dwelling would "put it out of the range of being practical and saleable in the Riverside area for a single or two-family dwelling").
As to the second and third prongs of the five-prong standard for granting a use variance, Appellants overlook the requirements that the hardship resulting from denial of *Page 9 
a use variance is not to be the result of any prior action of the applicant and does not result primarily from the applicant's desire to realize greater financial gain. Here, Appellants concede they have allowed the license for an automobile dealership on the Property to lapse. Appellant's Mem. of Law at 4-5. A new use for the Property may come at a cost, but the relevant hardship is not to result primarily from a desire to realize greater financial gain. Prov. Zon. Ord. Art. IX, § 902.3.
As to the fourth prong of the five-prong standard, Appellants argue that granting the use variance is the least relief necessary because it would allow a use which had been part of the legal conforming use of the Property for the last seventy years. No evidence was presented at the hearing to show that granting the use variance is the least relief necessary.
As to the fifth prong of the five-prong standard, Appellants claim that denial of their variance request denies all beneficial use of the land because the only way to enjoy a legal beneficial use is to demolish the building currently on the Property and erect a single family residence. However, restricting property to permitted uses within a zoning ordinance must deprive a property owner of all beneficial use of the property, such that granting a variance becomes necessary to avoid an indirect confiscation. OK Properties v. Zoning Bd. of Review of Cityof Warwick, 601 A.2d 953 (R.I. 1992) (emphasis added) (where Court held that landowner failed to show denial of variance denied all beneficial use of the property where petitioner presented testimony regarding the undevelopability of the property, but no testimony was produced showing that the easement does not grant petitioner any continuing benefit);see also Almeida v. Zoning Board of Review of the Town of Tiverton,606 A.2d 1318, 1320 (R.I. 1992) (where petitioner was not entitled to *Page 10 
variance allowing cooking facilities in basement apartment in single family area because denial of the variance would not result in complete loss of all beneficial use of property). Denial of the use variance for an automobile service station would not amount to indirect confiscation because Appellants can build one family dwellings, religious housing, or community residences on the Property in compliance with R-1 regulations.[3] Appellants did not put forth evidence showing that all other uses permitted in an R-1 zone would not be beneficial in any way. Therefore, the Board did not err in finding the Appellants have not put forth sufficient evidence to meet the above requirements of § 902.3.
 B. Continuance or Abandonment of a Legal Nonconforming UseVariance
In addition to asserting that they met the requirements of § 902.3, Appellants alternatively argue that their variance request is merely continuing a legal nonconforming use because an automotive service station includes only minor repairs under § 1000.19 of the Providence Zoning Ordinance, and minor repairs were included in the former nonconforming use variance on the Property for a used car lot with no major auto work. The Defendants contend that any prior nonconforming use was abandoned because the Bedrosians allowed their used car sales license on the Property to expire. Appellants argue, however, that the used car sales license is irrelevant because they are requesting to perform minor repairs, not engage in sales. Furthermore, the Applicant's representative *Page 11 
argued that the Applicant was advised by the Property's owner that there was a secondhand shop license in effect on the Property through May.
Section 201.2 of Article II in the Providence Zoning Ordinance provides for
 Continuance of use. Nothing in this ordinance shall prevent or be construed to prevent the continuance of a nonconforming use of any building or structure for any purpose to which such building or structure was lawfully established.
However, intensification of a nonconforming use is prohibited in § 201.7, which includes, but is not be limited to, increasing hours of operation, increasing the number of dwelling units, increasing the number of parking spaces, or increasing the seating capacity of a place of assembly. Prov. Zon. Ord. Art. II, § 201.7. Nonconforming enlargements and additions to buildings or structures containing a nonconforming use are also prohibited in § 201.5. Prov. Zon. Ord. Art. II, § 201.5.
Abandonment of nonconforming uses is addressed in § 201.10:
 If a nonconforming use is abandoned, it may not be reestablished. Abandonment of a nonconforming use shall consist of intent to abandon and some overt act, or failure to act, which would lead one to believe that the owner of the nonconforming use neither claims nor retains any interest in continuing the nonconforming use unless the owner can demonstrate an intent not to abandon the use. Prov. Zon. Ord. Art. II, § 201.10.
The Rhode Island Supreme Court has ruled that "[a] mere discontinuance of a nonconforming use for a period does not constitute abandonment of the use." See Town of West Greenwich v. A. Cardi Realty Associates,786 A.2d 354, 360 (R.I. 2001); Washington Arcade Associates v. Zoning Bd. ofReview of Town of North Providence, 528 A.2d 736 (R.I. 1987) (where the Court found insufficient proof for abandonment after business operations ceased due to, inter alia, proof of conscious effort to restore *Page 12 
premises to its original condition and ongoing industrial or manufacturing activities taking place on the property at all times). Abandonment requires "an intention to relinquish . . . a known right . . . evidenced by an overt act or a failure to act sufficient to support an implication of such intent." A.T. G., Inc. v. Zoning Boardof Review, 113 R.I. 458, 463, 322 A.2d 294, 297 (1974); see 4 Arden H. Rathkopf, The Law of Zoning and Planning § 74:2 (2005). A fact that may be sufficient to evidence intent to abandon is "[f]ailure to apply for licenses necessary for the continuance of a nonconforming use."Id. at § 74:5 (2005).[4] Whether abandonment has occurred is a factual question with the burden of proof on the party asserting abandonment.Washington Arcade Associates v. Zoning Board of Review, 528 A.2d 736,738 (R.I. 1987) (citation omitted).
In this case, Appellants argue that their application for a use variance allowing a "Repair Services-Automotive Service Station (Use Code 303 (45))"[5] is a continuance of the existing legal use on the Property for a "Used car lot with no major auto work" because the definition of an "automotive service station" in § 1000.19 includes only minor repairs.[6] While adding to, enlarging, or intensifying a nonconforming use is not permitted under §§ 201.5 and 201.7, Article II of the Providence Zoning Ordinance, *Page 13 
§ 201.2 of Article II provides that nothing in the Ordinance shall prevent or be construed to prevent the continuance of a nonconforming use. "Where a business use is involved, it has been held that the character of the business, as well as the volume of trade, determines whether the one business is a continuance of the other." 4 Arden H. Rathkopf, The Law of Zoning and Planning § 73:10 (2005); see HarmelCorp. v. Members of Zoning Bd. Of Review of Town of Tiverton,603 A.2d 303 (R.I. 1992) (where Court found lessee's use of premises as restaurant and banquet facility did not differ substantially from lessor's previous use of premises as club/restaurant and banquet facility and, thus preexisting nonconforming use was not destroyed);compare Souza v. Zoning Bd. of Review of Town of Warren, 248 A.2d 325,104 R.I. 697 (1968) (where "Auto Body Works" shop was substantially different from prior nonconforming use as a woodworking, plumbing and heating shop).
Here, the Board concludes that "just because a previous nonconforming use existed at the Property does not justify a further departure from which the current zone allows," but the Board's conclusion is not supported by findings of fact showing the requested use is a further departure from the allowed use. Board's Decision at 2-3. With respect to abandonment, the Board did not cite the expiration of the used car sales license or other grounds to conclude that a prior nonconforming use on the Property was abandoned. Although failure to apply for a necessary license may be a fact sufficient to evidence intent to abandon a nonconforming use, it has not been established that the used car license was necessary to the Appellants' variance request for repair services.
When reviewing a decision of a zoning board, the trial justice "must examine the entire record to determine whether `substantial' evidence exists to support the board's *Page 14 
findings," which means "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion. . . ." Lischio v.Zoning Bd. of Review of the Town of North Kingstown, 818 A.2d 685, 690
n. 5 (R.I. 2003) (citation omitted). In order for the Court to properly review a board decision, the decision must contain "the making of findings of fact and the application of legal principles in such manner that a judicial body might review a decision with a reasonable understanding of the manner in which evidentiary conflicts have been resolved and the provisions of the . . . ordinance applied." Thorpe etal. v. Zoning Board of Review of the Town of North Kingstown,492 A.2d 1236, 1237 (R.I. 1985). In order to properly review the Board's decision, this Court remands this matter for findings of fact as to the evidence relied upon by the Board in reaching its conclusion that the requested nonconforming use is a further departure from that which the current zone allows.
 C. Basis for the Board's Decision
Finally, Appellants argue with respect to parking, fire safety conditions and Appellants' maintenance of the Property that the Board's conclusions were "inappropriate" and "groundless." Specifically, Appellants contend that the Board incorrectly relied upon its personal knowledge and witness neighbors' stereotypes of the area surrounding the Property.
A zoning board "may consider probative factors within its knowledge in denying the relief sought or may acquire adequate knowledge through observation and inspection on a view." Toohey v. Kilday, 415 A.2d 732,737 (R.I. 1980). However, in reviewing zoning board decisions, the Rhode Island Supreme Court has held that "our decisions must necessarily reflect the record as we find it, uninfluenced by factors which may have *Page 15 
been known to the board but of which we have no knowledge."Toohey, 415 A.2d at 737 (upholding the reversal of a zoning board's decision because the "board should have disclosed on the record the observations or information upon which it acted").
Lay judgments of neighbors regarding traffic congestion are not of probative value in granting a special exception. See Toohey,415 A.2d at 737. While public health, safety, and welfare are substantial considerations for granting a nonconforming use, a mere increase in traffic at the site of proposed use does not necessarily adversely affect public convenience and welfare. Id.; Lincoln Building Associationv. Zoning Board of Review of the City of Warwick, 105 R.I. 332,252 A.2d 25 (1969). Evidence of traffic congestion and hazards is germane to whether a proposed use will adversely affect the public convenience and welfare; however, for such evidence to be effective upon ultimate determination, it should relate, not to existence of congestion at location of proposed use, but to whether traffic generated by its establishment at that site will intensify the congestion or create a hazard. Bonitati Bros., Inc. v. Zoning Board of Review of the City ofWoonsocket, 104 R.I. 170, 242 A.2d 692 (1968) (citations omitted). The reason for imposing a heavy burden of proof to establish a nonconforming use is that the law generally views nonconforming uses as detrimental to a zoning scheme. See Rico Corporation v. Town of Exeter, et al.,787 A.2d 1136, 1144-1145 (R.I. 2001); but see also Hotel Motel Ass'n ofOakland v. City of Oakland, 344 F.2d 959, 968 (9th Cir. 2003) (upholding an ordinance continuing the operation of nonconforming uses for business owners who maintained security conditions because it was substantially related to the legitimate government interest of neighborhood safety). *Page 16 
In the instant case, it was permissible for the Board to consider probative factors within its knowledge and to acquire knowledge through inspection on a view, but the Board did not disclose on the record the observations and information from the inspection upon which it acted. Although lay judgments of neighbors regarding traffic congestion are not of probative value in granting a special exception, the Board's decision mentions evidence presented at the hearing of neighbors' testimony that the repair facility would generate junk cars, cause fire vehicles' access to the street to narrow, and have a negative effect on the neighborhood. See Board's Decision at 1-2. In its conclusions of law, the Board's decision does not cite evidence of parking, maintenance, and fire safety concerns.
While public safety and welfare are significant considerations for the Board, a mere increase in traffic at the Property does not necessarily adversely affect public convenience and welfare. The Board notes neighbors' testimony that cars from the used car sales lot cause traffic congestion for fire vehicles, but effective evidence must relate to whether traffic generated by establishment of the repair service at the Property will intensify the congestion or create a hazard. LincolnBuilding Association, 105 R.I. at 332. The Board's decision must include "findings of fact and the application of legal principles in such manner that a judicial body might review a decision with a reasonable understanding of the manner in which evidentiary conflicts have been resolved and the provisions of the . . . ordinance applied."Thorpe, 492 A.2d at 1237.
Accordingly, this Court must remand the case for further proceedings consistent with this opinion. On remand, the Board is directed — on the basis of the record before it and in accordance with the applicable standards of law — to make specific findings of fact *Page 17 
on the particular evidence and characteristics of Appellants' application that lead the Board to its decision.
 IV Conclusion
After review of the record before it, this Court finds that the Board's findings and decision were inadequate, amounting to unsupported conclusions. Accordingly, this Court hereby reverses and remands this matter to the Providence Zoning Board of Review for adequate findings consistent with this opinion. This Court shall retain jurisdiction. Counsel for appellant shall present an Order consistent with this Decision.
[1] "Repair service" is listed under Use Code 45, Art. III, § 303 of the Providence Zoning Ordinance. Although the terms "repair service" and "garage repair" are not defined in the Ordinance's Art. X Definitions section, "Repairs" are defined in § 1000.116, Art. X as a "change meant to remedy damage or deterioration of a structure or its appurtenances." Footnote 5 in the Prov. Zon. Ordin., Art. III, § 303 specifies that garage repair and transmission shops are permitted only when located at least two hundred (200) feet from an R zone.
[2] See supra note 1 for the Providence Zoning Ordinance's definition of "repairs." "Automotive service station" is defined in § 1000.19, Art. X of the Prov. Zon. Ordin. as a "building or portion of a building in which minor automotive repairs or services are performed; fuel, oil, batteries and accessories are sold; grease racks, elevators and tire mounting devices are employed; but excluding automobile body repairing and painting and automotive parts." (Emphasis added.)
[3] The Providence Zoning Ordinance provides for more than one permissible use in R-1 zones. Appellant's Mem. of Law at 5; Prov. Zon. Ordin. Art. II, § 303 (uses permitted in R-1 zones include One Family Detached Dwellings (Use Code 11), Religious Housing and Convents (Use Code 15.5), and Community Residences (Use Code 15.6)). Indirect confiscation could have also occurred if the Appellants' lot size was smaller than the minimum lot size for an R-1 zone under the Providence Zoning Ordinance, but Appellants' lot size of 6,047 sq. ft. is larger than the minimum of 6,000 sq. ft. required for an R-1 residential district by § 304 of Article II in the Providence Zoning Ordinance.
[4] The Rhode Island Supreme Court has not ruled on this specific issue, but for other jurisdictions' treatment of the license issuesee Dawson v. Bd. of Appeals, 469 N.E.2d 509, 509 (Mass.App. 1984), finding that there was an abandonment of the use of a property as a nursing home when the license to maintain a nursing home was surrendered, so heating the building and using it for storage were to no avail. See also State ex rel. Harz v. City of New Orleans, 216 La. 849,44 So. 2d 889 (1950) (where intent to abandon was found where there was no city or state license renewal for a pharmacy for two years and neighbors testified that the pharmacy was known to be closed and had a front sign saying "closed," despite pharmacist's testimony that it was open).
[5] Section 1000.19 of the Providence Zoning Ordinance provides that an "Automotive service station" is a "building or portion of a building in which minor automotive repairs or services are performed: fuel, oil batteries and accessories are sold; grease racks, elevators and tire mounting devices are employed; but excluding automobile body repairing and painting and automotive body parts." (Emphasis added.)
[6] The terms defined in the Providence Zoning Ordinance in Art. X, § 1000 and the terms used in the use regulations in Art. III, § 303 vary. For a definition of "repairs" see supra note 1; for a definition of "automotive service station" see supra note 7. "Automotive Repair Shop" is defined in Art. X, § 1000.18 as a "building or portion of a building in which major repairs (such as replacement of engines, replacement of transmissions, body work and glass work) are made to vehicles." *Page 1