**Supreme Court**

No. 2009-303-M.P.
(NC 07-621)

W. Bart Lloyd et al.                    :

                    v.                    :

Zoning Board of Review for the City of          :
          Newport et al.

NOTICE:   This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

W. Bart Lloyd et al.                          :

v.                                :

Zoning Board of Review for the City of        :
Newport et al.


Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Justice Goldberg, for the Court.**  The Supreme Court granted a petition for writ of certiorari filed by the petitioners, W. Bart Lloyd (Lloyd) and Elizabeth Lloyd (collectively, petitioners or Lloyds), seeking review of a judgment of the Superior Court affirming the decision of the Zoning Board of Review for the City of Newport (zoning board or board), which granted a special-use permit to Mark Bardorf and Diana Bardorf (respondents or Bardorfs).[1]  The trial justice decided two consolidated appeals from the zoning board.[2]  However, we granted certiorari only with respect to the decision of the trial justice that affirmed the zoning board's grant of a special-use permit to the respondents, the petitioners' abutting landowners.  For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

---

[1] Lloyd appealed the zoning board's September 1, 2006 denial of his application for a special-use permit (NC 06-467) to the Superior Court and subsequently appealed the November 28, 2007 decision of the zoning board, which granted a special-use permit to his neighbors, the Bardorfs (NC 07-621).  The trial justice's decision encompassed both appeals.  Only the Bardorf matter is before us.

[2] The trial justice indicated in his decision that an order granting the motion to consolidate was entered on October 8, 2008, but the record does not reflect that the motion was in fact granted.  Nevertheless, the Superior Court's decision treats the cases as consolidated, and judgment has entered as to both.

## Facts and Travel

The respondents own property located at 18 Chestnut Street in Newport, Rhode Island, which is zoned R-10, located in the city's Historic District, and designated as Lot 249 on Tax Assessor's Plat 12. The petitioners own the abutting property at 16 Chestnut Street, which also is zoned R-10.[3] The Bardorfs' residence is a dimensionally nonconforming development as defined by both § 17.08.010 of the Code of Ordinances of the City of Newport (Newport Ordinances or zoning ordinance) and G.L. 1956 § 45-24-31(49) of the Rhode Island Zoning Enabling Act of 1991 (P.L. 1991, ch. 307, § 1) (zoning enabling act). Specifically, it is nonconforming in three respects: lot size, lot coverage, and front setback. The record discloses that in January 1992, the zoning board granted a dimensional variance to allow a former owner of the property to maintain a deck and veranda that had been constructed without a permit and that resulted in an increase in the building's lot coverage and a commensurate increase in its dimensional nonconformity. Nonconforming lot coverage and the overall mass of the new structure lay at the heart of this dispute.

The Bardorfs purchased the property in December 2006. They planned to live there with their three children and sought to construct a two-story addition that would include another bedroom and expand the first floor. To avoid any "zoning issues," the Bardorfs hired an architect to develop plans that would conform to the zoning requirements. On May 31, 2007, the Bardorfs filed an application for a special-use permit pursuant to §§ 17.72.030(C) and 17.108.020(G) of the Newport Ordinances. The application proposed the removal of a deck and an existing two-story addition on the rear of their home and the construction of an addition

---

[3] R-10 zoning mandates a minimum lot area of 10,000 square feet with minimum lot width of eighty feet; minimum setback requirements are fifteen-foot front line, ten-foot side line, and twenty-foot rear line; and the portion of a lot covered by buildings shall not exceed 20 percent. Code of Ordinances of the City of Newport Rhode Island §§ 17.20.030; 17.20.040; 17.20.050.

measuring twenty-two by thirty-four feet. The Bardorfs also sought to include a deck or veranda off the second-floor bedroom, measuring four feet by eleven feet. The application stated that the addition would otherwise comply with R-10 zoning setback requirements: it would not exceed the thirty-foot height limitation and—because it would replace the previously-authorized veranda and deck—respondents posited that it would result in an actual decrease in building lot coverage from 36 percent to 34 percent. The petitioners objected to the application.

The Bardorfs' application was considered by the zoning board at two meetings, on October 11 and October 22, 2007.[4] In addition to the testimony from the respective parties, both sides presented real-estate experts. Counsel for the Bardorfs asserted that, although the applicants were seeking a special-use permit to construct the four-foot by eleven-foot second-story deck, zoning relief was not necessary to build the addition because it was an alteration that could be made "as a matter of right."[5] Section 17.72.030(C). According to counsel, the Bardorfs applied for both a special-use permit and a variance to "cover[] all of the bases," but, he contended, according to the zoning ordinance, the Bardorfs were entitled to construct the addition as "a matter of right" because it would not increase the dimensional nonconformity and would otherwise conform to the zoning ordinance's dimensional requirements. The zoning board did not pass on this argument, although the trial justice made reference to it in his decision.

_____

[4] Before the board meetings, the application was approved by the Newport Historic District Commission, which found that the plans were compatible with the surrounding neighborhood and the house itself.

[5] Section 17.72.030(C), "Alteration to nonconforming development," states, in pertinent part:

"Excepting Proposed Decks * * *. Alteration to dimensionally nonconforming structures that otherwise conform to the use regulations of the zoning district shall be allowed as a matter of right if the alteration in and of itself: (1) conforms to the current dimensional requirements of the zoning district in which the property is located; and (2) does not increase or intensify the element(s) of the dimensional nonconformity."

The Bardorfs presented Peter M. Scotti (Scotti), a real-estate expert, who had reviewed the proposed plans, inspected the property, and examined the petition and applicable zoning regulations. He had considered the characteristics of the neighborhood, the site, the structure itself, and the planning department's approval of the plans as consistent with Newport's comprehensive plan. Scotti testified that lot size would remain the same, as would the setbacks; the building footprint—its lot coverage—would diminish by approximately 2 percent. He concluded that the proposal met the standard set forth in the zoning ordinance's special-use permit section.

William E. Coyle III (Coyle) testified as a real-estate expert for petitioners. Like Scotti, Coyle had visited the site, reviewed the proposed plans, the application, the neighborhood, and reports from the planning department and the Historic District Commission. Unlike Scotti, however, Coyle opined that the proposed addition on the rear of the Bardorfs' house would reduce neighborhood property values, diminish the Lloyds' sunlight, and obstruct their view. Although he maintained that the zoning board should "concern itself with the size and the mass" of the structure to be situated on the lot, Coyle conceded that the zoning ordinance makes no reference to the building mass in determining compliance with the Newport Ordinances.

The zoning board unanimously approved the Bardorfs' application. The board issued a written decision that set forth its findings and conclusions and declared that, based on the testimony of the parties and their witnesses, as well as the Historic District Commission Staff Report and the Newport planning board's determination that the proposal conformed to the city's comprehensive community plan, the application was approved.[6]

---

[6] The zoning board's findings of fact tracked the language of the zoning ordinance and included the following: the proposed alterations were compatible with the neighborhood and were in harmony with the surrounding area; the physical improvements would be organized in a manner

The petitioners appealed the decision to the Superior Court; and, in a written decision, a justice of the Superior Court affirmed the board's decision. The trial justice found no error on the part of the zoning board in granting a special-use permit; he further found that the board did not err in rejecting petitioners' contention that respondents were required to seek a dimensional variance. The trial justice concluded that there was sufficiently reliable, probative, and substantial evidence on the record before the board to support its decision. An order affirming the decision of the board was entered on September 9, 2009, and judgment entered nunc pro tunc on December 1, 2011.[7]

In his decision, the trial justice first addressed petitioners' argument that the zoning board erred in failing to require respondents to seek dimensional relief in conjunction with this application. The trial justice correctly observed that a special use may coexist with a dimensional variance only if both forms of relief coextensively are allowed by the municipality's ordinance and that the Newport Ordinances do not contain such a provision; he also found that the zoning board did not err when it refused to apply the dimensional variance standard of review to this application and that the decision of the board was not affected by error of law.

The trial justice also rejected petitioners' argument that respondents may not alter their building because the addition would increase or intensify the existing nonconformity associated

that would allow reasonable use and enjoyment of the property; the improvements would be of an appropriate size and scale as shown on the plans and had earned the approval of the Historic District Commission; the percentage of lot coverage would decrease as a result of the improvement to the structure, and all improvements would conform to all minimum setback requirements; the proposed alterations would not increase or intensify the elements of the property's dimensional nonconformities; and the relief sought was a special-use permit.

[7] The record reflects that judgment was entered in September 2009, but only as to NC 06-467, the case involving petitioners' own application for a special-use permit. Consequently, judgment for this matter, NC 07-621, was necessarily nunc pro tunc. See Black's Law Dictionary 920 (9th ed. 2009) ("A judgment entered on a day after the time when it should have been entered, as of the earlier date.").

with building lot coverage. Throughout these proceedings, an increase in the structure's size or overall mass has been characterized as the "building envelope." The petitioners have argued before the zoning board, in Superior Court, and again before this Court, that an increase in a structure's mass or "building envelope" is tantamount to an increase in building lot coverage under the ordinance. The trial justice contrasted the definitions of "building envelope" and "lot building coverage" as set forth in the zoning ordinance. He noted that § 17.08.010 of the zoning ordinance defines the term "[b]uilding envelope" as "the three-dimensional space within which a structure is permitted to be built on a lot and which is defined by regulations governing building setbacks, maximum height, and bulk" and that the term "lot building coverage" was defined as "that portion of the lot that is or may be covered by buildings and accessory buildings."[8] He concluded that each term has independent meaning and that the terms were not intended to be used interchangeably.

Before this Court, petitioners contend that the zoning ordinance was misapplied and that the Bardorfs should have been required to obtain a dimensional variance rather than a special-use permit. Second, petitioners assert that allowing the Bardorfs to make use of lot coverage that was authorized by a previously-obtained dimensional variance was error. Third, petitioners argue that the failure to evaluate whether the proposed addition would constitute an intensification of the nonconforming lot coverage was erroneous. Finally, petitioners maintain that the record evidence does not support the granting of a special-use permit. We address these issues seriatim.

---

[8] These definitions are synonymous with the definitions set forth in G.L. 1956 § 45-24-31(11), (40).

**Standard of Review**

When an aggrieved party appeals a decision of a zoning board of review to the Superior Court, the Superior Court "shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact." Section 45-24-69(d). On appeal, the Superior Court may

> "[r]everse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions, or decisions which are:
>
> "(1) In violation of constitutional, statutory, or ordinance provisions;
>
> "(2) In excess of the authority granted to the zoning board of review by statute or ordinance;
>
> "(3) Made upon unlawful procedure;
>
> "(4) Affected by other error of law;
>
> "(5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
>
> "(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." Id.

It is the function of the Superior Court to "examine the whole record to determine whether the findings of the zoning board were supported by substantial evidence." Apostolou v. Genovesi, 120 R.I. 501, 507, 388 A.2d 821, 824 (1978). Substantial evidence has been defined "as more than a scintilla but less than a preponderance." Id. at 508, 388 A.2d at 824-25. The trial justice may not "substitute [his or her] judgment for that of the zoning board if [he or she] can conscientiously find that the board's decision was supported by substantial evidence in the whole record." Id. at 509, 388 A.2d at 825.

On certiorari, this Court confines its review to a determination of whether the trial justice

acted within the authority granted to the Superior Court under the statute. Sciacca v. Caruso, 769 A.2d 578, 582 (R.I. 2001); see also Almeida v. Zoning Board of Review of Tiverton, 606 A.2d 1318, 1320 (R.I. 1992). We must "scrutinize the record as a whole to determine 'whether legally competent evidence exists to support the findings of the court below.'" Mill Realty Associates v. Crowe, 841 A.2d 668, 672 (R.I. 2004) (quoting Caswell v. George Sherman Sand & Gravel Co., 424 A.2d 646, 648 (R.I. 1981)); see also Toohey v. Kilday, 415 A.2d 732, 735 (R.I. 1980). This Court will not disturb a decision unless it is shown that the Superior Court justice "misapplied the law, misconceived or overlooked material evidence, or made findings that were clearly wrong." Lischio v. Zoning Board of Review of North Kingstown, 818 A.2d 685, 690 (R.I. 2003) (quoting Bernuth v. Zoning Board of Review of New Shoreham, 770 A.2d 396, 399 (R.I. 2001)); see also R.J.E.P. Associates v. Hellewell, 560 A.2d 353, 354 (R.I. 1989).

**Analysis**

**Expansion as a Matter of Right**

We address at the outset the argument that respondents were entitled to expand their dimensionally nonconforming development "as a matter of right" and whether the zoning board made such a determination. Specifically, ordinance provision § 17.72.030(C) contains three discrete paragraphs which are not identified separately; we shall refer to them as paragraphs one, two, and three of § 17.72.030(C). Section 17.72.030(C) provides:

> "No nonconforming use of land or nonconforming use of a structure shall be changed except to a conforming use or structure. No nonconforming use of land or nonconforming use of a structure, if once changed to conform, shall thereafter be changed so as to be nonconforming by use again.
>
> "Dimensionally nonconforming—Excepting Proposed Decks (as defined in the Rhode Island State Building Code and regulations adopted thereby). Alteration to dimensionally nonconforming structures that otherwise conform to the use

regulations of the zoning district shall be allowed as a matter of right if the alteration in and of itself: (1) conforms to the current dimensional requirements of the zoning district in which the property is located, and (2) does not increase or intensify the element(s) of the dimensional nonconformity.

"A structure or land which is nonconforming by dimension, but the use of which is a use permitted by right in the district in which the land or structure is located, shall only be altered, changed, enlarged or subject to addition or intensification with respect to its nonconforming element(s) by obtaining a special use permit from the zoning board of review."

Accordingly, an expansion of a nonconforming structure that falls within paragraph two of § 17.72.030(C) is allowed "as a matter of right" and does not require application to or approval by the zoning board; a building permit generally is granted by the appropriate building official. In this case, respondents applied for and received a special-use permit from the zoning board in order to construct a significant addition to a dimensionally nonconforming structure. By doing so, they invoked the jurisdiction of the zoning board. In issuing its decision, the board did not declare, as petitioners contend, that respondents were entitled to the expansion "as a matter of right." Rather, the board applied the appropriate criteria set forth in the zoning ordinance for the grant of a special-use permit. Therefore, we are satisfied that the trial justice erred when he concluded that the zoning board allowed the expansion "as a matter of right." This error is of no moment, however, because the trial justice also carefully examined the sufficiency of the zoning board's decision in light of the criteria set forth in the zoning ordinance and concluded that the special-use permit properly was granted.

**The Special-Use Permit**

The petitioners assert that both the zoning board and the trial justice erred in applying the standard governing a special-use permit to the Bardorfs' application. The Bardorfs argue that they applied for both a special-use permit and a variance only to "cover[] all of the bases" and

- 9 -

that they were seeking a special-use permit only to construct the second-story deck. They argue that they did not need zoning relief to construct the remaining portion of the addition because it was an alteration that could be made "as a matter of right." However, this "belt and suspenders" argument is not supported by the record before this Court. The respondents' written application makes no reference to a second-story deck, nor does it suggest that they are entitled to this relief as a matter of right. Accordingly, we are satisfied that respondents sought and obtained a special-use permit for their proposed project. Therefore, we shall address whether a special-use permit was the appropriate relief and, if so, whether it properly was granted.

The zoning enabling act, set forth in chapter 24 of title 45 of the General Laws, mandates that local zoning ordinances provide for the issuance of special-use permits, to be approved by the zoning board of review. See § 45-24-42(a). Generally, a special-use permit relates to a specific use the owner wishes to undertake on the parcel—a use that is not allowed under the ordinance absent zoning board approval. See § 45-24-31(57) (defining "special use" as "[a] regulated use which is permitted pursuant to the special-use permit issued by the authorized governmental entity, pursuant to § 45-24-42"").

In addition to establishing procedural requirements for obtaining a special-use permit, municipal zoning ordinances must:

> "(1) Specify the uses requiring special-use permits in each district;
>
> "(2) Describe the conditions and procedures under which special-use permits, of each or [sic] the various categories of special-use permits established in the zoning ordinance, may be issued;
>
> "(3) Establish criteria for the issuance of each category of special-use permit that shall be in conformance with the purposes and intent of the comprehensive plan and the zoning ordinance of the city or town;
>
> "(4) Provide for public hearings and notification of the date, time,

place, and purpose of those hearings to interested parties * * *;

"(5) Provide for the recording of findings of fact and written decisions; and

"(6) Provide that appeals may be taken pursuant to § 45-24-70."
Section 45-24-42(b).

The Newport Ordinances, however, are not confined to proposed uses; the Newport Ordinances also require a special-use permit in order to expand a dimensionally nonconforming structure. Although this approach may give rise to confusion, the ordinance specifically provides that an alteration of a nonconforming development requires a special-use permit as set forth in § 17.72.030(C).[9] The criteria for the issuance of a special-use permit is set forth in § 17.108.020(G), which provides:

"Special use permits shall be granted only where the zoning board of review finds that the proposed use or the proposed extension or alteration of an existing use is in accord with the public convenience and welfare, after taking into account, where appropriate:

"1. The nature of the proposed site, including its size and shape and the proposed size, shape and arrangement of the structure;

"2. The resulting traffic patterns and adequacy of proposed off-street parking and loading;

"3. The nature of the surrounding area and the extent to which the proposed use or feature will be in harmony with the surrounding area;

"4. The proximity of dwellings, churches, schools, public buildings and other places of public gathering;

---

[9] The language of § 17.72.030(C), "Alteration to nonconforming development," is provided above.

"5. The fire hazard resulting from the nature of the proposed buildings and uses and the proximity of existing buildings and uses;

"6. All standards contained in this zoning code;

"7. The comprehensive plan for the city."

Thus, any decision by a zoning authority granting or denying a special-use permit must be based on a finding that the proposed use or extension or alteration of an existing use "is in accord with the public convenience and welfare." Section 17.108.020(G). This Court has declared that these standards essentially are conditions precedent to the board's exercise of its authority to act affirmatively on an application for a special-use permit. See Guiberson v. Roman Catholic Bishop of Providence, 112 R.I. 252, 258, 308 A.2d 503, 506 (1973). When the conditions precedent are satisfied, it is an abuse of discretion to deny the requested special-use permit. See Salve Regina College v. Zoning Board of Review of Newport, 594 A.2d 878, 882 (R.I. 1991).

In this case, petitioners argue that the dimensional variance standard is more stringent than that required for a special-use permit; we disagree. According to § 17.108.010(B)(5) of the ordinance,

> "[i]n granting a [dimensional] variance, the zoning board of review shall require that evidence of the following standards shall be entered into the record of the proceedings:
>
> "a. That the reasons set forth in the application justify the granting of the variance and that the variance, if granted, is the minimum variance that will make possible the reasonable use of the land, building or structure;
>
> "b. That the variance will not be injurious to the neighborhood or otherwise detrimental to the public welfare, and will not impair the intent or purpose of the zoning code or the comprehensive plan upon which this zoning code is based;

"c. That the hardship from which the applicant seeks relief is due to the unique characteristics of the subject land or structure and not to the general characteristics of the surrounding area; and is not due to a physical or economic disability of the applicant; and

"d. That the hardship is not the result of any prior action of the applicant and does not result primarily from the desire of the applicant to realize greater financial gain." See also § 45-24-41(d)(2) ("[I]n granting a dimensional variance, * * * the hardship suffered by the owner of the subject property if the dimensional variance is not granted amounts to more than a mere inconvenience." (Emphases added.)); Lischio, 818 A.2d at 693.

Although petitioners insisted that the Bardorfs were required to seek a dimensional variance, the zoning board declined to apply this standard to the Bardorfs' application. The trial justice agreed with the zoning board. Our careful review of the relevant ordinances convinces us that a special-use permit was the appropriate relief in this case.

The record is clear: respondents sought zoning board approval to alter and increase a dimensionally nonconforming development, as that term is defined in the ordinance. According to the ordinance, the appropriate form of relief for a party seeking to expand a dimensionally nonconforming structure is a special-use permit. We conclude that the zoning board granted the application that was before it, a special-use permit.

**The 1992 Variance**

The petitioners next allege that the trial justice overlooked "the effect of the sources" of the nonconforming lot coverage. According to petitioners, the trial justice should have considered how the parcel "came to be so significantly overburdened." This argument centers on the 1992 dimensional variance and whether that variance, which increased lot coverage by 5 percent, was a factor that should have been considered in granting the special-use permit or whether it was a disqualifying event. Specifically, petitioners contend that the Bardorfs improperly were permitted to bootstrap "the mere authorization of a harmless deck pursuant to

- 13 -

the 1992 [v]ariance into a very broad authorization for a two-story building," which, they contend, is in contravention of § 17.72.030(D) of the Newport Ordinances.[10]  The petitioners argue that any alteration to the deck that was the subject of the 1992 dimensional variance could only occur if further dimensional relief was granted.  We deem this incorrect.

This Court previously has declared that "a dimensional variance [may] be granted only in connection with the enjoyment of a <u>legally</u> <u>permitted</u> <u>beneficial</u> <u>use</u>, [and] not in conjunction with a use granted by special permit."  <u>Newton v. Zoning Board of Review of Warwick</u>, 713 A.2d 239, 242 (R.I. 1998).  After our decision in <u>Newton</u>, the Legislature amended chapter 24 of title 45 to address situations in which both dimensional variances and special-use permits could be allowed, but only if the zoning ordinance so provided.  Section 45-24-42(c) provides:

> "The ordinance additionally may provide that an applicant may apply for, and be issued, a dimensional variance in conjunction with a special use.  If the special use could not exist without the dimensional variance, the zoning board of review shall consider the special use permit and the dimensional variance together to determine if granting the special use is appropriate based on both the special use criteria and the dimensional variance evidentiary standards."

Meanwhile, § 45-24-41(d)(2) provides, in pertinent part, that "[t]he zoning board of review has the power to grant dimensional variances where the use is permitted by special use permit if provided for in the special use permit sections of the zoning ordinance."

Reading these sections together, we agree with the trial justice that the General Assembly intended that a use granted by special-use permit may coexist with a dimensional variance only when a municipality's zoning ordinance so provides.  The Newport Ordinances do not allow a special-use permit and dimensional variance to be granted in conjunction with each other.  In this

---

[10] Section 17.72.030(D) reads:  "A use established by variance or special use permit shall not acquire the rights of this section."

case, however, the dimensional variance was granted fifteen years before application was made for a special-use permit. This circumstance is inapposite to our holding in Newton, 713 A.2d at 240, because, in this case, respondents did not seek permission to engage in a use of the property that required the approval of the zoning board. The respondents applied for permission to expand a dimensionally nonconforming structure—for a permitted use—and that was the issue that was addressed by the zoning board. The board agreed with respondents that the percentage of lot coverage would decrease as a result of the proposed addition and that the proposal, including the second-floor deck, constituted "minimum requests for the reasonable use of the property." We discern no error in this conclusion.

Furthermore, contrary to petitioners' contention, the 1992 dimensional variance was neither limited nor conditioned in any way, and there is no evidence that any express terms or special conditions were incorporated into the board's approval. See § 45-24-43 (providing, in pertinent part, that where a zoning board of review grants a variance, the board may apply special conditions that "may include, but are not limited to, provisions for * * * [m]inimizing the adverse impact of the development upon other land"); see also Town of Warren v. Frost, 111 R.I. 217, 220, 301 A.2d 572, 573 (1973) (noting that the enabling legislation authorized a zoning board to impose "reasonable conditions" when granting a variance). In this case, the application sought "a variance to the dimensional requirements for permission to maintain a 12' X 13' veranda and an 8' X 13' porch." However, petitioners argue that the variance merely allowed the owners to "maintain" the structure and that if the deck is not preserved or "maintained," the variance is lost. We disagree. The 1992 decision that allowed a prior owner to maintain a deck and veranda means simply that: the deck and veranda originally were built in contravention of the zoning ordinance, such that the owners were required to obtain a dimensional variance in

- 15 -

order to preserve the structure. There were no express conditions attached to the relief granted by the board.

We are of the opinion that neither the Superior Court nor the zoning board erred as a matter of law in allowing the Bardorfs to utilize the expanded lot coverage authorized by this 1992 dimensional variance.

## Intensification of the Nonconformity

The petitioners next argue that the two-story addition[11] to a dimensionally nonconforming structure would "increase or intensify" the nonconformity associated with lot building coverage and was erroneously granted by the zoning board.[12] The petitioners suggest that an increase in the mass of a structure or in the square footage of a structure's "building envelope" is akin to an increase in a structure's "lot building coverage," even with no change in the "footprint" of the building. In fact, petitioners contend that the mass of a structure, or its density or bulk, must be taken into consideration when calculating the portion of the lot covered by buildings. Although these factors may be good policy considerations, they are not addressed in the Newport Ordinances.

The petitioners' contention that an increase in the three-dimensional space above the site of the proposed addition would "intensify" the building lot coverage wholly depends on whether "building envelope" and "lot building coverage" are synonymous terms. The zoning board, however, did not accept that proposition. Rather, the zoning board concluded that, despite an increase in "bulk" of the overall structure, the proposed two-story addition would result in a

---

[11] At oral argument, it was revealed that the addition has been constructed.

[12] The Newport Ordinances do not define "intensification," which appears in § 17.72.030(C), "Alteration to nonconforming development."

decrease in "lot coverage." Unfortunately for petitioners, the bulk or overall mass of the structure are not proper considerations under Newport's zoning ordinance.

The trial justice likewise rejected petitioners' argument that the Bardorfs were precluded from altering the structure because it would increase or intensify the existing nonconformity associated with lot building coverage. The Newport Ordinances define "lot building coverage" as "that portion of the lot that is or may be covered by buildings and accessory buildings." Section 17.08.010. That definition is confined to the two-dimensional lot coverage and is distinct from the definition of "building envelope," which is defined in terms of three-dimensional space. The zoning ordinance fails to address building density. Therefore, the trial justice reasoned that, "[b]ased on the unambiguous language of § 17.08.010 of the Newport [Ordinances] and its corollary, § 45-24-31 of the [G]eneral [L]aws, it is clear that the drafters of the [zoning ordinance] did not intend for the terms 'building envelope' and 'lot building coverage' to be employed interchangeably." We agree with the trial justice's reasoning: "'Lot building coverage' is a two-dimensional concept, encompassing the total area of the lot covered by buildings and accessory buildings; it does not contemplate a vertical dimension." In fact, as the trial justice observed, this conclusion is consistent with the zoning ordinance's definition of "lot" as "[a] parcel of land whose boundaries have been established by some legal instrument." Section 17.08.010.

We discern no error in the trial justice's analysis. The zoning ordinance does not contemplate a calculation of building mass or three-dimensional spaces in the criteria for alterations of dimensionally nonconforming structures. The city could, of course, consistent with its enabling authority, more carefully define "intensification" or amend its zoning ordinance to incorporate a three-dimensional calculation into lot coverage concepts and thereby more

equitably, and perhaps more fairly, evaluate proposals such as those contained in respondents' application for zoning relief.[13]

## D

### Sufficiency of Record Evidence

Finally, petitioners contend that the zoning board's analysis was incomplete and that the grant of the special-use permit was therefore erroneous. In addition, petitioners argue that the evidence did not support the ultimate conclusion. In support of these contentions, petitioners cite to the expert testimony they proffered at the zoning board hearing.

The trial justice reviewed the evidence and determined that the zoning board's decision was "amply supported by legally competent record evidence." He concluded that the members of the board "made an informed and record-supported decision after reviewing the conflicting expert testimony [and] that the requirements of § 17.108.020(G)(1) of the Newport Code had been satisfied." It is well settled that a fact-finder is free to accept or reject the testimony of an expert witness. Restivo v. Lynch, 707 A.2d 663, 671 (R.I. 1998) (citing Kyle v. Pawtucket Redevelopment Agency, 106 R.I. 670, 673, 262 A.2d 636, 637-38 (1970)). In this case, the zoning board accepted the testimony of the respondents' expert witness, a decision that was within the board's discretion. The trial justice carefully and comprehensively considered the

---

[13] For instance, Barrington's ordinance provides that "[a]ny increase in the volume or intensity of use unaccompanied by a structural change of the premises shall not be considered an extension, addition to or enlargement of a nonconforming use." Barrington Zoning Ordinance, § 185-33(A). Additionally, the Bristol Code of Ordinances explains that "[a] conforming use within a building or structure which is nonconforming by dimension may be intensified, provided that such intensification is in conformance with the use and lot area per dwelling unit regulations, if applicable, for the zone in which it is located." Bristol Code of Ordinances, Art. VII, Sec. 28-219(6) entitled "Building or structure nonconforming by dimension"; see also North Kingstown Code of Ordinances, § 14.3 (regulating "massing" of buildings, which is defined in Article 2.0 of the ordinances as "[t]he three dimensional bulk of a structure consisting of its height, width, and depth"); Westerly Code of Zoning Ordinances, § 260-64(G)(1), (2) (regulating "massing" and "bulk" of certain buildings).

evidence and he neither misconceived nor overlooked any material evidence. It is apparent that legally competent evidence exists to support his findings.

### Conclusion

For the reasons stated, we affirm the judgment and direct that the papers in this case be remanded to the Superior Court with our decision endorsed thereon.



**RHODE ISLAND SUPREME COURT CLERK'S OFFICE**

*Clerk's Office Order/Opinion Cover Sheet*

**TITLE OF CASE:**    W. Bart Lloyd et al. v. Zoning Board of Review for the City of Newport et al.

**CASE NO:**    No. 2009-303-M.P.
(NC 07-621)

**COURT:**    Supreme Court

**DATE OPINION FILED:**    March 29, 2013

**JUSTICES:**    Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia JJ.

**WRITTEN BY:**    Associate Justice Maureen McKenna Goldberg

**SOURCE OF APPEAL:**    Newport County Superior Court

**JUDGE FROM LOWER COURT**:

Associate Justice Edward C. Clifton

**ATTORNEYS ON APPEAL:**

For Plaintiff:  Stephen M. Richard, Esq.

For Defendant:  Turner C. Scott, Esq.